DECISION
{¶ 1} On September 26, 2002, defendant-appellant James Eckstein was indicted for aggravated burglary and attempted rape. Following a jury trial, Eckstein was convicted of attempted rape. The trial court imposed a five-year prison term, which was more than the minimum sentence. Eckstein appeals his conviction and sentence, bringing forth three assignments of error. For the following reasons, we affirm.
 {¶ 2} Eckstein was employed as a maintenance worker at the apartment complex where the victim, Beth Macke Pummil ("Macke"), lived. On September 14, 2002, Eckstein was sanding and painting Macke's balcony railings. He used a five-foot stepladder to reach her balcony. When Macke heard him working outside, she opened the sliding glass door and asked him if he would paint the walls in her apartment. He agreed, and while he was working in the apartment, Macke went to the store. She returned with a six-pack of beer and some soft drinks for herself and Eckstein. Macke told Eckstein that the beer was for her friends who were coming over that night to take her to the gambling boats in Indiana. Macke testified that she told Eckstein that if her friends decided not to come over, then he could have the beer. (The record indicates that Macke was a recovering alcoholic and did not like to keep beer in her apartment.) Eckstein remembered the conversation differently and testified that Macke had told him that he could return that evening and drink the beer with her. Macke stayed home that evening by herself and went to sleep in her bedroom.
 {¶ 3} Eckstein testified that he worked at the apartment complex until evening and then went to a local bar. He testified that he drank whiskey and beer throughout the evening. Eckstein testified that he was not planning to go to Macke's apartment, but that through circumstances that arose during the evening, he ended up walking to a bar that was close to her apartment so he could cash a check for cab fare. The bar was closed, he testified, so he went to Macke's apartment to have a beer and use her phone to call for a ride home. This was at 2:00 a.m.
 {¶ 4} Because the apartment complex did not have a buzzer system to alert the residents about a visitor, Eckstein used the stepladder he had left outside the building to reach Macke's balcony. He testified that he knocked on the sliding door, but when she did not answer, he opened the unlocked door and walked to her bedroom. Macke was sleeping without any clothes on because it was hot in her apartment.
 {¶ 5} Macke testified that she awoke and found Eckstein standing over her bed rubbing his groin area. She did not recognize him at first, but Eckstein identified himself. She testified that he straddled her on the bed, and when she began to scream, he covered her mouth with his hands. She could not breathe, so she began to shake her head. When Eckstein removed his hands, she told him she had to go to the bathroom. He let her up, and she grabbed her cellular phone from the nightstand and ran to the front door. Eckstein chased her and grabbed her by the arms as she was trying to escape. Macke testified that he threw her on the floor, pushed her legs apart, and tried to unbutton his pants. She testified that he kept saying, "I don't want it this way." Macke fought back and managed to run out of the apartment complex and call 911. On the 911 tape, Macke was crying and screaming that Eckstein had broken into her apartment and tried to rape her.
 {¶ 6} Officer Greg Kaufmann responded to the scene and found Macke naked outside the apartment complex. He testified that she was distraught and visibly shaken.
 {¶ 7} The state presented photographs of Macke's injuries. She had a cut lip, scratches on her face, bruises on her upper arms and on the inside of her knees, and broken fingernails.
 {¶ 8} Eckstein admitted that he entered Macke's apartment through the sliding glass door and that he had covered her mouth when she was in the bedroom. He explained that she had started to scream and that he did not want her to wake up the neighbors. He testified that he was only at her apartment because she had earlier invited him over for a beer. He admitted that he had grabbed her by the upper arms when she was trying to leave the apartment, but only to keep her from running outside naked. He denied straddling her on the bed or throwing her on the floor and trying to pry her legs apart.
 {¶ 9} Eckstein testified that after Macke ran out of the apartment, he left through the side door and walked home. The next day he learned that Macke had contacted the police. He called the investigating officer to give a statement. He stated that he was drunk and had not intended to go to Macke's apartment to rape her.
 {¶ 10} In his first assignment of error, Eckstein maintains that his conviction was against the manifest weight of the evidence. To reverse a conviction on the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[1] A new trial should be granted on the weight of the evidence only in exceptional cases.[2]
 {¶ 11} On this record, we conclude that there was no manifest miscarriage of justice in this case. Although Eckstein maintains that the incident was a terrible mistake and not a foiled crime, the jury could have reasonably found Macke's version of the events more credible. The recording of the 911 call and the testimony of the responding police officer both indicated that Macke had been distraught and frightened. The fact that she ran outside naked to escape Eckstein spoke to her level of fear. Further, Macke's injuries corroborated her story: her face was cut and scratched where Eckstein had covered her mouth with his hands; her nails were broken where she had gripped the door; her arms were bruised where Eckstein had grabbed her; and the inside of her knees were bruised where Eckstein had tried to pry her legs apart.
 {¶ 12} Because we find no error in the jury's resolution of the conflicting testimony, we overrule the first assignment of error.
 {¶ 13} In his second assignment of error, Eckstein contests the sufficiency of the evidence supporting his conviction. To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[3]
 {¶ 14} At trial, the state had to present evidence to demonstrate that Eckstein, purposely or knowingly engaged in conduct that, if successful, would have constituted the offense of rape.[4] R.C. 2907.02(A)(1) provides that rape occurs when a person compels another, who is not the offender's spouse, to engage in sexual conduct by force or threat of force. "A `criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."[5] A substantial step involves conduct that is "strongly corroborative of the actor's criminal purpose."[6]
 {¶ 15} Eckstein argues that the state failed to present any evidence that he did anything to constitute a substantial step toward committing rape. We are unpersuaded.
 {¶ 16} Here, Macke testified that Eckstein entered her apartment in the early morning hours, without her permission, climbed on top of her while she was in bed, covered her mouth when she began to scream, chased her and grabbed her when she tried to escape, and tried to pry her legs apart while unbuttoning his pants. During this time, he was saying, "I don't want it this way." Viewing the evidence in a light most favorable to the state, we hold that these facts amounted to a substantial step towards the commission of rape. Because Eckstein took a substantial step towards committing rape by holding Macke down and trying to unbutton his pants, we hold that there was sufficient evidence to support his conviction of attempted rape. The second assignment of error is overruled.
 {¶ 17} In his third assignment of error, Eckstein argues that his sentence was contrary to law because the trial court failed to make the required findings before imposing a prison term greater than the statutory minimum. Here, Eckstein was convicted of attempted rape, a second-degree felony, which carried a minimum prison term of two years and a maximum term of eight years.[7] Eckstein was sentenced to a five-year prison term.
 {¶ 18} Ohio's sentencing statutes provide that the minimum sentence is appropriate for an offender who has not previously served a prison term, unless the trial court specifies that the minimum term "will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."[8] A review of the record in this case reveals that the trial court made the required findings at the sentencing hearing. Specifically, the court noted that "[w]hat happened to [Macke] on September 15th was so horrendous that a woman at 3 o'clock in the morning left her home naked and went outside and remained outside in that condition and humiliation waiting for the police to come * * *. [Eckstein's] relationship to the victim facilitated the offense * * *. He knew that she lived alone * * *. This Court specifically finds that there is no remorse. The jury found there was no remorse and for this Court to impose a sentence of the minimum sentence would demean the seriousness of the offense and would not adequately protect the public."
 {¶ 19} Eckstein contends that the trial court failed to cite its reasons for rejecting the minimum sentence. While we are convinced that the court did give its reasons for imposing more than the minimum sentence when it stated that Eckstein had showed no remorse and that his relationship with Macke had facilitated the offense, we note that findings under R.C. 2929.14(B) do not require accompanying reasons.[9]
 {¶ 20} During oral arguments, this court asked the parties to brief the issue of whether the United States Supreme Court's decision in Blakely v. Washington[10] affected the propriety of Eckstein's sentence. Blakely stands for the proposition that, under the Sixth Amendment, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[11] The "statutory maximum" is not the longest term the defendant can receive under any circumstances, but is "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant."[12]
 {¶ 21} In his supplemental brief, Eckstein argues that because the facts necessary to support a prison term greater than the minimum were neither admitted by himself nor found by the jury, his sentence violated his Sixth Amendment right to a trial by jury. The state argues that Eckstein's sentence did not run afoul of Blakely, because the trial court imposed a sentence of five years, which was less than the statutory maximum prison term (8 years) that the trial court could have imposed on Eckstein.
 {¶ 22} After reviewing the decision in Blakely, we hold that the minimum sentence in this case was not the "statutory maximum." The findings that the minimum prison term would demean the seriousness of the offense or not adequately protect the public from future crime by the offender are discretionary factors that the trial court may give weight to based on the facts reflected in the jury's verdict.
 {¶ 23} Under Ohio's sentencing scheme, guidelines are provided to trial courts to ensure that there is parity in sentencing among defendants. The Ohio Supreme Court has said, "[M]inimum sentences are favored for first-time imprisonment."[13] Thus, the minimum sentence must be the starting point when imposing a prison sentence on an offender who has not previously been to prison.[14] But it is not required that a trial court impose the minimum sentence. It has the authority to impose any prison term within the range authorized by law if it specifies one of the R.C. 2929.14(B)(2) factors: that the shortest prison term would demean the seriousness of the offender's conduct or that it would not adequately protect the public from future crime by the offender or others.
 {¶ 24} Eckstein argues that the R.C. 2929.14(B)(2) findings were additional facts used to enhance his sentence over the maximum sentence prescribed by state law and that those facts should therefore have been submitted to the jury to be proved beyond a reasonable doubt. We disagree.
 {¶ 25} In making either finding required under R.C.2929.14(B)(2), the sentencing court must use the factors concerning seriousness and the likelihood of recidivism found in R.C. 2929.12.[15] The factors set forth in R.C. 2929.12 are discretionary factors used by the trial court to guide it in imposing an appropriate sentence within the range authorized by state law.[16] If the R.C. 2929.14(B)(2) findings are based on the discretionary factors set forth in R.C. 2929.12, then it follows that the determination that the shortest prison term demeans the seriousness of the offense or does not adequately protect the public from future crime by the offender must also be discretionary.
 {¶ 26} These discretionary factors are used to guide the court in imposing a sentence within the standard statutory range. This court has held that a sentence within the standard statutory range is not unconstitutional under Blakely because a sentence within the range authorized by law is presumed to be based solely on the jury's verdict.[17] Here, the standard statutory range of prison terms for attempted rape was two to eight years. The record demonstrates that the trial court considered the R.C.2929.12 factors when it found that Macke had suffered physical and emotional harm, that Eckstein had no remorse, and that Eckstein's relationship with Macke had facilitated the offense. Based on those discretionary findings, the trial court determined that the shortest prison term would demean the seriousness of Eckstein's conduct and would not protect the public from future crime by him, and the court accordingly imposed a five-year sentence. Since this sentence was within the range authorized by state law and, thus, based on facts reflected in the jury's verdict, Eckstein's sentence complied with Blakely. R.C.2929.14(B) comports with Blakely's holding, which is designed to protect a defendant from a higher sentence based on facts not found by the jury.
 {¶ 27} In sum, we hold that the R.C. 2929.14(B)(2) findings that must be specified prior to a departure from the minimum prison term are discretionary factors to be used by the trial court in determining what sentence to impose within the authorized range. The fact that a trial court is not required to give its reasons for its R.C. 2929.14(B) findings supports our holding. The R.C. 2929.14(B) findings serve only to confirm that a court has considered the statutory preference of a minimum prison term when determining what sentence to impose within the authorized range.[18] The R.C. 2929.14(B)(2) factors are not additional facts used to enhance an offender's sentence beyond the "statutory maximum."
 {¶ 28} Because we have concluded that the findings necessary to depart from the minimum sentence for an offender who has never served a prison term do not indicate that the trial court is imposing a higher sentence based on facts not reflected in the jury's verdict, we overrule the third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Doan, P.J., concurs.
Painter, J., concurs in judgment only.
Painter, J., concurring in judgment only.
 {¶ 29} Only to emphasize that Blakely does not apply in this situation, but that we are expressing no opinion on other applications, I concur in the judgment.
[1] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,768 N.E.2d 541.
[2] Id.
[3] Id. at 386.
[4] See R.C. 2923.02.
[5] State v. Woods (1976), 48 Ohio St.2d 127,357 N.E.2d 1059.
[6] Id.
[7] See R.C. 2929.14(A)(2).
[8] R.C. 2929.14(B)(2); State v. Edmonson, 86 Ohio St.3d 324,326, 1999-Ohio-110, 715 N.E.2d 131.
[9] Edmonson, 86 Ohio St.3d at 326.
[10] (2004), ___ U.S. ___, 124 S.Ct. 2531.
[11] Id. at 2536.
[12] Id. at 2537.
[13] Edmondson, supra, at 325.
[14] See State v. Hoskins (2001), 11th Dist. No. 2001 WL 276935 (sentence vacated because trial court did not consider imposing minimum sentences).
[15] State v. Jones, 2000-Ohio-1908, 3rd Dist. No. 10-2000-05.
[16] See State v. Parker (Jan. 19, 1999), 12th Dist. No. CA98-04-025; Edmonson, supra.
[17] State v. Bell, 1st Dist. No. C-030726, 2004-Ohio-3621, at ¶ 42.
[18] See Edmondson, supra, at 327.