The STATE of Ohio, Appellee,

v.

BERRY, Appellant.

[Cite as *State v. Berry,* 159 Ohio App.3d 476, 2004-Ohio-6027.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2003–02–053.

Decided Nov. 15, 2004.

Robin N. Piper, Butler County Prosecuting Attorney, and Randi E. Froug, for appellee.

Scott N. Blauvelt, for appellant.

---

WALSH, Judge.

{¶ 1} Defendant-appellant, Curtis Berry, appeals his conviction and sentence for aggravated robbery, with a gun specification, in the Butler County Common Pleas Court.

{¶ 2} In October 2002, appellant was indicted for aggravated burglary, pursuant to R.C. 2911.11(A)(2); aggravated robbery, pursuant to R.C. 2911.01(A)(1), with an attendant firearm specification, pursuant to R.C. 2941.145; and theft,

pursuant to R.C. 2913.02(A)(1). The trial court severed the theft charge from the aggravated burglary and aggravated robbery charges for purposes of trial.[1]

{¶ 3} At appellant's jury trial on the aggravated burglary and aggravated robbery charges, the state's evidence showed that on the night in question, appellant walked up to Juan Fuentes and his brother, Sergio Fuentes, while they were standing in Juan's backyard, pulled a gun on them, and demanded money. Juan gave appellant his wallet, which contained $325, and Sergio gave him the money he had in his pockets. Appellant then ordered Juan and Sergio into their house. While inside, Juan's friend, Jonathan Martinez, came out of the bathroom. Appellant ordered all three men to sit on a couch and then searched them one by one. When he had Martinez on the floor with his foot on his chest, Martinez grabbed appellant's hand, and Juan and Sergio overpowered him. During the fight, Jose Jimenez, who had been sleeping upstairs, came down and saw what was happening. He called the police, and they came and arrested appellant. When the police searched appellant, they found Juan's wallet, which contained Juan's birth certificate and $325.

{¶ 4} Appellant testified that on the night in question, he was selling crack cocaine in the area and was scheduled to meet a prostitute at a street corner near where Juan Fuentes lives to sell her some crack cocaine. According to appellant, someone at Juan's house motioned for him to come over. Appellant testified that he gave Juan and Sergio some drugs, and at one point, Juan showed him a gun and tried to sell it to him for $400. He testified that he went into the house at Juan's invitation and that once inside, Juan struck him on the back of the head with the pistol, causing him to fall to one knee. Then, according to appellant, several other Hispanic men in the house attacked him and robbed him of $35.

{¶ 5} During their deliberations, the jurors sent the trial court a note, asking, "We cannot get 12 votes on charges 2 and 3,[2] what now? People are not changing views." The trial court ordered the jury back to the jury room and gave them an instruction substantially similar to the one set forth in *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188.[3] The jurors returned to their

---

1. The aggravated burglary and aggravated robbery charges arose from events that occurred on August 11, 2002, while the theft charge arose from events that occurred on May 23, 2002.

2. At his jury trial, Berry was charged only with aggravated burglary (count one) and aggravated robbery, with a firearm specification (count two). Thus, when the jurors referred to "charges 2 and 3" in the note, they were apparently referring to the aggravated robbery charge and the firearm specification.

3. {¶ a} *Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188, sets forth the proper supplemental charge ("the *Howard* charge") to be given in this state to juries that become deadlocked, as follows:

{¶ b} "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty

deliberations. Thereafter, they returned a verdict, acquitting appellant of the aggravated burglary charge but convicting him of the aggravated robbery charge and the firearm specification. In a separate proceeding, appellant pled guilty to the theft charge. The trial court sentenced appellant to five years in prison for his aggravated robbery conviction, to be served consecutively to a three-year prison term for his conviction on the firearm specification. The trial court also sentenced appellant to an 11–month prison term for theft, to be served concurrently with his sentence for aggravated robbery.

{¶ 6} Appellant appeals his conviction and sentence for aggravated robbery and the firearm specification, raising the following assignments of error:

cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all others." Id. at paragraph two of the syllabus.

{¶ c} In this case, the trial court gave the jurors the following supplemental instruction, after they indicated they were deadlocked:

{¶ d} "Ladies and gentlemen from your last question it appears that it's appropriate to give you a further jury instruction. In a large proportions [sic] of cases, absolute certainty cannot be obtained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of other jurors. [Sic.] Each question should be examined with proper regard in deference to the opinions of others. It is desirable that the case be decided. You are selected in the same manner and from the same sources as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more cable [sic], impartial or intelligent than this one.

{¶ e} "Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case if you can conscientiously do so. You should listen to one another's opinions with the disposition to be persuaded. Do not hesitate to re-examine your views and change your positions if you are convinced it's erroneous. If there is disagreement, all jurors should re-examine their positions, given that a unanimous verdict has not been reached.

{¶ f} "Jurors for acquittal should consider whether their doubt is reasonable considering it's not shared equally honest, [sic] who have heard the same evidence with the same desire to arrive at the truth and under the same oath.

{¶ g} "Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurring [sic] by all others. I'm going to ask you to go back in and deliberate further and see if it's possible that you can reach your verdict."

{¶ 7} Assignment of Error No. 1:

{¶ 8} "The verdicts on count two and the specification to count two were against the manifest weight of the evidence."

{¶ 9} Appellant argues that his conviction on the aggravated robbery charge and its accompanying firearm specification were against the manifest weight of the evidence because the state's witnesses gave conflicting testimony on certain issues, while his claim that he was the victim of the crime was "plausible" and corroborated by a police officer's testimony. We find this argument unpersuasive.

{¶ 10} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1594. In determining whether a conviction is contrary to the manifest weight of the evidence, an appellate court must review the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and taking into account the witnesses' credibility, to determine whether the jury clearly lost its way in resolving evidentiary conflicts and created such a manifest miscarriage of justice that its verdict must be reversed and a new trial ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717, cited in *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The decision of the trier of fact is owed deference, since the trier of fact is " 'best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Miles* (Mar. 18, 2002), Butler App. No. CA2001–04–079, 2002 WL 445041, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 11} Appellant argues that the state's witnesses provided conflicting testimony on how the gun was dislodged from his hand and where the gun ended up after the struggle over it had ended. By contrast, appellant contends, his testimony that he had been the victim of the incident was "plausible," since a police officer testified that appellant told him shortly after he had been arrested that the Hispanic men inside the house had robbed him of $35.

{¶ 12} However, the inconsistencies in the testimony of the state's witnesses were minor, and they did not render the testimony inherently unworthy of belief. Furthermore, appellant's version of events was far from plausible. In order to

believe it, the jury would have had to believe that Juan and Sergio invited appellant into their home, robbed him, and then called the police to have them come and arrest him. The police found Juan's wallet, money, and birth certificate in appellant's pocket. Appellant was unable to explain how Juan's wallet got in his pocket. The jurors were in the best position to determine whether the state's witnesses or appellant was lying about who committed the robbery, and they were entitled to believe all, part, or none of the testimony of any witness who testified, including appellant. *State v. Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548. There was no evidence presented that showed that the jury lost its way and created such a manifest miscarriage of justice that reversal is warranted and a new trial required. *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717. Accordingly, we conclude that the jury's verdict convicting appellant of aggravated robbery along with the accompanying firearm specification was not contrary to the manifest weight of the evidence.

{¶ 13} Appellant's first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} "The trial court erred in its instruction to the jury following indication by the jury that it could not reach a unanimous verdict on certain charges, to the prejudice of defendant-appellant and in violation of his right to due process and a fair trial pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶ 16} Appellant argues that the trial court's decision to give the jury a *Howard* charge after it indicated it was deadlocked on Count Two of the indictment and the firearm specification resulted in a "coerced verdict." Specifically, he argues that the trial court erred by not inquiring of the jury "whether further deliberations would result in a verdict" before giving them the *Howard* charge. We disagree with this argument.

{¶ 17} Appellant has not cited, nor have we found, any authority to support his suggestion that the trial court was required to ask the jury "whether further deliberation would result in a verdict" before giving it the supplemental charge set forth in *Howard,* 42 Ohio St.3d 18, 537 N.E.2d 188, at paragraph two of the syllabus. Appellant further suggests that the fact that the jury deliberated for less than a half-hour after being given the *Howard* charge "militates in favor a finding that the instruction was coercive" and insists that the trial court should have declared a mistrial. However, the evidence of appellant's guilt in this case was overwhelming, and his claim that he was the one who was actually robbed lacked credibility. Consequently, we reject appellant's argument that the jury was coerced into convicting appellant of aggravated robbery as a result of their being given the *Howard* charge.

{¶ 18} Appellant also argues that the trial court erred in reciting the *Howard* charge to the jury. He points out that under *Howard,* a trial court is supposed to instruct the jury to, among other things, examine each question submitted to it "with proper regard *and* deference to the opinions of others," but in this case, the trial court told the jury that "[e]ach question should be examined with proper regard *in* deference to the opinions of others." Appellant argues that this portion of the instruction violated his right to a fair trial, since it advised the jurors "to disregard their oath and decide a case, not based upon their individual conscience, but based upon the views of other jurors." We find this argument unpersuasive.

■ {¶ 19} The language seized upon by appellant to demonstrate error appears to be simply one of several mistakes that were made in transcribing the trial court's statements. See footnote 3. Furthermore, even if the transcript was accurate, the trial court's instruction, when considered as a whole, substantially comports with the instruction set forth in *Howard.* The slight difference in wording (i.e., the use of "in" rather than "and") would not have caused the jurors "to disregard their oaths" and "decide the case based upon the views of the other jurors" rather than their own, as appellant asserts.

■ {¶ 20} Finally, appellant argues that instead of giving the jurors the *Howard* charge, it should have given them the following instruction, set forth in *State v. Martens* (1993), 90 Ohio App.3d 338, 343, 629 N.E.2d 462:

{¶ 21} " 'VERDICT IMPOSSIBLE. It is conceivable that after a reasonable length of time honest differences of opinion on the evidence may prevent an agreement upon a verdict. When that condition exists you may consider whether further deliberations will serve a useful purpose. If you decide that you cannot agree and that further deliberations will not serve a useful purpose you may ask to be returned to the courtroom and report that fact to the court. If there is a possibility of reaching a verdict you should continue your deliberations.' " Id., quoting 4 Ohio Jury Instructions (1992) 118, Section 415.50(4).

{¶ 22} Appellant maintains that the *Martens* court found the foregoing instruction "appropriate in lieu of the *Howard* charge." This is incorrect. In *Martens,* the trial court gave the jury a *Howard* instruction similar to the one the trial court gave to the jury, here. Id., 90 Ohio App.3d at 342, 629 N.E.2d 462. The appellant in *Martens* argued on appeal that the trial court was required to give the jury the instruction found in 4 Ohio Jury Instructions (1992) 118, Section 415.50(4), by virtue of the fact that the instruction was contained in Ohio Jury Instructions. The *Martens* court rejected that argument, finding that "[t]he instructions found in Ohio Jury Instructions are not mandatory" and further stating that "[r]equiring a trial court to rigidly follow these instructions would

remove judicial discretion and control from the trial proceedings and not allow the flexibility necessary to manage the various situations that arise during a jury trial."

{¶ 23} Additionally, while appellant proffered a nonspecific objection to the *Howard* charge, he never asked the trial court to give the instruction quoted in *Martens,* 90 Ohio App.3d at 343, 629 N.E.2d 462. The decision whether to give an instruction rests within the trial court's discretion, and the trial court's failure to give the one set forth in *Martens* above does not amount to an abuse of discretion in any event. Id. Accordingly, we reject appellant's argument that the trial court's use of the *Howard* charge coerced the jury's guilty verdict under the circumstances present here.

{¶ 24} Appellant's second assignment of error is overruled.

{¶ 25} Supplemental Assignment of Error:

{¶ 26} "The trial court erred to the prejudice of defendant-appellant when it imposed a sentence beyond the statutory minimum in violation of the Sixth and Fourteenth Amendments to the United States Constitution."

{¶ 27} Appellant asserts that the trial court erred when it imposed a five-year sentence on him for his aggravated robbery conviction. He argues that under *Blakely v. Washington* (2004), 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403, the trial court was obligated to sentence him to no more than the statutory minimum sentence of three years.

{¶ 28} Appellant failed to raise this issue in the trial court. Generally, an appellate court will not consider an error that was not called to the trial court's attention at a time when the trial court could have corrected the error or avoided it altogether. *State v. Hill* (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274. If we are to recognize this assignment of error at all, then, the error must constitute "plain error." Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Notice of plain error pursuant to Crim.R. 52(B) must be taken only with the utmost caution, only under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 94–95, 7 O.O.3d 178, 372 N.E.2d 804.

{¶ 29} In Ohio, aggravated robbery is a felony of the first degree. R.C. 2911.01(C). R.C. 2929.14(A)(1) states, "For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years." R.C. 2929.14(B) provides:

{¶ 30} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the

shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

{¶ 31} "* * *

{¶ 32} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."

{¶ 33} The trial court found that imposing the shortest prison term on appellant for his aggravated robbery conviction would demean the seriousness of his conduct and not adequately protect the public from future crime by him or others. As a result, the trial court sentenced appellant to a five-year prison term on his aggravated robbery conviction, rather than to the three-year minimum term. Appellant asserts that this sentence violates *Blakely*.

{¶ 34} At issue in *Blakely* was the constitutionality of a sentence imposed under the state of Washington's sentencing scheme. In that case, Blakely had pled guilty to second-degree kidnapping, involving domestic violence and use of a firearm. In the state of Washington, second-degree kidnapping is a class B felony, carrying a maximum punishment of ten years' imprisonment. Under Washington's sentencing statute, the "standard range" of punishment for second-degree kidnapping with a firearm is 49 to 53 months. The sentencing statute permits a trial judge to impose a sentence above the standard range if he finds "substantial and compelling reasons justifying an exceptional sentence." One of the aggravating factors justifying imposition of an exceptional sentence is whether the offender acted with "deliberate cruelty." The trial court found that Blakely had acted with "deliberate cruelty" in carrying out the kidnapping and therefore imposed on him an exceptional sentence of 90 months.

{¶ 35} Blakely subsequently appealed his sentence to the United States Supreme Court, which reversed the trial court's imposition of an exceptional sentence. The *Blakely* court held, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, —— U.S. ——, 124 S.Ct. at 2536, 159 L.Ed.2d 403, quoting *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. The court further held that the "statutory maximum" for purposes of *Blakely* and *Apprendi* "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (Emphasis sic; citations omitted.) *Blakely*, —— U.S. ——, 124 S.Ct. at 2537, 159 L.Ed.2d 403.

{¶ 36} Applying these principles to the case before it, the *Blakely* court found that the maximum sentence that the trial judge was permitted to impose for second-degree kidnapping with use of a firearm was 53 months, not ten years, as the state had argued. The court concluded that because Washington's sentencing procedure did not comply with the Sixth Amendment, Blakely's sentence was invalid.

{¶ 37} In this case, appellant urges us to find that *Blakely* applies to Ohio's sentencing scheme and that, as a result, Ohio's sentencing scheme, like Washington's, does not comply with the Sixth Amendment. Specifically, he argues that because R.C. 2929.14(B)(2) requires a trial court, rather than a jury, to make certain factual determinations in order to impose a sentence on an offender above the presumptive minimum, it violates the rule in *Blakely* that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Blakely*, —— U.S. ——, 124 S.Ct. at 2536, 159 L.Ed.2d 403. Stated differently, appellant asserts that the factual findings necessary under R.C. 2929.14(B)(2) to impose a sentence above the minimum are the type of "additional facts" that have to be submitted to a jury and proved beyond a reasonable doubt. Since that submission was not done in this case, appellant argues that his sentence violates *Blakely*. We disagree with this argument.

{¶ 38} First, the majority in *Blakely* made it clear that its decision did not apply to states with indeterminate sentencing schemes. The court stated:

{¶ 39} "JUSTICE O'CONNOR argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. *Indeterminate sentencing does not do so*. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial fact-finding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." (Emphasis added; citations omitted.) *Blakely*, —— U.S. ——, 124 S.Ct. at 2540, 159 L.Ed.2d 403.

{¶ 40} Judge Griffin and Professor Katz have suggested in their treatise, Ohio Felony Sentencing Law, that provisions such as R.C. 2929.14(B) "are intended

only to structure judicial discretion within an indeterminate sentencing scheme and not to set ceilings on sentences as occurred under the Washington statute [reviewed in *Blakely*]." Griffin & Katz, Ohio Felony Sentencing Law (2004) 482, Section 2:22. They further suggest that provisions like R.C. 2929.14(B) "involve guidance for determining the impact of a sentence on public protection and proportionality—determinations that have always been made by a judge in deciding fairness and necessity of a sentence. Those are decisions that have never been consigned to juries and, thus, are not governed by the Sixth and Fourteenth Amendments to the United States Constitution." Id.

{¶ 41} In *State v. Eckstein*, Hamilton App. No. C–030139, 2004-Ohio-5059, 2004 WL 2244828, the court rejected an argument similar to the one made by appellant in this case, stating as follows:

{¶ 42} "After reviewing the decision in *Blakely*, we hold that the minimum sentence [for attempted rape] in this case was not the 'statutory maximum.' The [R.C. 2929.14(B)(2) ] findings that the minimum prison term would demean the seriousness of the offense or not adequately protect the public from future crime by the offender are discretionary factors that the trial court may give weight to based on the facts reflected in the jury's verdict.

{¶ 43} "* * *

{¶ 44} "Eckstein argues that the R.C. 2929.14(B)(2) findings were additional facts used to enhance his sentence over the maximum sentence prescribed by state law and that those facts should therefore have been submitted to the jury to be proved beyond a reasonable doubt. We disagree.

{¶ 45} "* * *

{¶ 46} "These discretionary factors are used to guide the court in imposing a sentence within the standard statutory range. This court has held that a sentence within the standard statutory range is not unconstitutional under *Blakely* because a sentence within the range authorized by law is presumed to be based solely on the jury's verdict. [*State v. Bell*, Hamilton App. No. C–030726, 2004-Ohio-3621, 2004 WL 1531904, at ¶ 42.] Here, the standard statutory range of prison terms for attempted rape was two to eight years. The record demonstrates that the trial court considered the R.C. 2929.12 factors when it found that [the victim] had suffered physical and emotional harm, that Eckstein had no remorse, and that Eckstein's relationship with [the victim] had facilitated the offense. Based on those discretionary findings, the trial court determined that the shortest prison term would demean the seriousness of Eckstein's conduct and would not protect the public from future crime by him, and the court accordingly imposed a five-year sentence. Since this sentence was within the range authorized by state law and, was, based on facts reflected in the jury's

verdict, Eckstein's sentence complied with *Blakely*. R.C. 2929.14(B) comports with *Blakely's* holding, which is designed to protect a defendant from a harsher sentence based on facts not found by the jury.

{¶ 47} "In sum, we hold that the R.C. 2929.14(B)(2) findings that must be specified prior to a departure from the minimum prison term are discretionary factors to be used by the trial court in determining what sentence to impose within the authorized range. The fact that a trial court is not required to give its reasons for its R.C. 2929.14(B) findings supports our holding. The R.C. 2929.14(B) findings serve only to confirm that a court has considered the statutory preference of a minimum prison term when determining what sentence to impose within the authorized range. The R.C. 2929.14(B)(2) factors are not additional facts used to enhance an offender's sentence beyond the 'statutory maximum.'" (Footnote omitted.) *Eckstein*, Hamilton App. No. C–030139, 2004-Ohio-5059, at ¶ 22–27.

{¶ 48} We conclude that the trial court did not commit plain error when it imposed a five-year sentence on appellant for aggravated robbery. *Blakely* applies to states that have determinate sentencing schemes like the state of Washington, and not to states that have indeterminate sentencing schemes like Ohio. See *Blakely*, —— U.S. ——, 124 S.Ct. at 2540, 159 L.Ed.2d 403; Griffin & Katz, Ohio Felony Sentencing Law (2004) 482, Section 2:22. Furthermore, to the extent that *Blakely* does apply, the trial court's imposition of a five-year sentence on appellant for aggravated robbery still does not violate that decision, "because a sentence within the range authorized by law is presumed to be based solely on the jury's verdict," *State v. Eckstein*, Hamilton App. No. C–030139, at ¶ 25, following *State v. Bell*, Hamilton App. No. C–030726, at ¶ 42, and the five-year sentence for aggravated robbery is within the range authorized by law. R.C. 2929.14(A)(1). In light of the foregoing, the trial court did not commit plain error in imposing a five-year sentence on appellant for his aggravated robbery conviction.

{¶ 49} Appellant's supplemental assignment of error is overruled. The judgment is affirmed.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and POWELL, J., concur.