OPINION
{¶ 1} This case requires us to consider whether Ohio's felony sentencing scheme violated the right of appellant, Ilyas S. Abdul-Mumin a.k.a. Edwin Robinson, to a trial by jury as guaranteed by theSixth Amendment to the United States Constitution.
 {¶ 2} By two separate indictments filed in the years 2002 and 2003, appellant was charged with six counts of kidnapping, seven counts of aggravated robbery, 20 counts of rape, four counts of gross sexual imposition, two counts of felonious assault, two counts of robbery, and one count of theft, all in connection with a month-long crime spree that occurred in Franklin County, Ohio in the Spring of 1999. All counts carried firearm specifications, and several counts alleged that appellant committed the crime with a sexual motivation and/or that he was a violent sexual predator.
 {¶ 3} The Franklin County Court of Common Pleas granted the State's motion to join the two indictments for trial, which began on January 28, 2004. Before the case was submitted to the jury, the State dismissed one aggravated robbery count, one kidnapping count, and the two robbery counts. Following its deliberations, the jury found appellant guilty on 35 of the remaining counts, and on all firearm specifications associated therewith. Appellant waived his right to a jury trial with respect to the violent sexual predator specification, and the same was tried to the court 13 days after the conclusion of appellant's jury trial. By written decision and entry journalized February 24, 2004, the court found appellant not guilty of the sexually violent predator specification.
 {¶ 4} On February 27, 2004, the trial court held a sentencing hearing.[1] It was undisputed that appellant had never before served a prison term. Pursuant to R.C. 2929.14(B), when prison is imposed upon a defendant who has not previously served a prison term, the court must impose the shortest prison term authorized for each felony offense unless the court finds on the record that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C.2929.14(B)(2). The trial judge in the instant case imposed non-minimum terms for each count upon which appellant had been convicted, and, in the course of pronouncing sentence, found on the record that the shortest prison term would "significantly" demean the seriousness of appellant's conduct, and that such a term would not adequately protect the public from future crime by appellant. (Tr. 564.) The trial judge also ordered that most of the sentences be served consecutively, pursuant to R.C.2929.14(E)(4). Appellant's aggregate sentence is 175 years, five months in prison.
 {¶ 5} Appellant appealed his sentence and asserts the following assignment of error for our review:
A trial court may not sentence a defendant to non-minimum and consecutive sentences based on facts not found by the jury or admitted by defendant in violation of his right to trial by jury contra the ohio and federal constitutions.
 {¶ 6} In support of his assignment of error, appellant argues that, pursuant to the decision of the United States Supreme Court in Blakely v.Washington (2004), 124 S.Ct. 2531, 159 L.Ed.2d 403, rehearing denied (2004), 125 S.Ct. 21, 159 L.Ed.2d 851, the trial court could lawfully sentence him to no more than the statutory minimum sentence as to each offense of which he was found guilty, and that the court also erred in imposing consecutive sentences.
 {¶ 7} In Blakely, the Court held that the defendant's Sixth Amendment right to a jury trial had been violated when he was sentenced to a term of imprisonment roughly 70 percent longer than the maximum sentence specified by the applicable Washington statute, upon a finding by the sentencing judge that the defendant had acted with "deliberate cruelty." The Court relied upon its previous decision in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, in which it held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.
 {¶ 8} In Blakely, the state argued that the relevant "statutory maximum" for Apprendi purposes was the Washington statute that set the maximum sentence for a "Class B" felony (including the offense to which Blakely had pleaded guilty) at ten years, a threshold which Blakely's sentence did not exceed. But the Court rejected this argument because another Washington statute set the "standard range" for Blakely's offense — second degree kidnapping with a firearm — at 49 to 53 months. That same statute, part of Washington's Sentencing Reform Act, allowed a judge to impose a sentence above the "standard range" if he or she found "substantial and compelling reasons justifying an exceptional sentence." The Act provided a non-exhaustive list of factors that would justify such an upward departure. However, pursuant to the Act, "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense." Blakely, supra, at 2537. (Citation omitted.)
 {¶ 9} The Court determined that the upper limit of the "standard range" was the "statutory maximum" for Apprendi purposes, and that Blakely's sentence violated Apprendi because he received a sentence above the 53-month upper limit of the standard range solely by virtue of a judicial finding of "deliberate cruelty," a fact that was neither determined by a jury nor admitted by the defendant. Relying uponBlakely, and the holding in Apprendi upon which Blakely is based, appellant herein argues that his sentence deprived him of his constitutional right to a trial by jury because the court's nonminimum sentences were based upon findings of fact not actually made by the jury upon the record.
 {¶ 10} Appellant's reliance upon Blakely is misplaced. The Washington sentencing scheme at issue in Blakely bears little resemblance to that of Ohio. Blakely involved a grid-like sentencing scheme in which individual offenses were classified within felony classes according to degrees of seriousness, and standard sentencing ranges were prescribed for each of these sub-classes. The United States Supreme Court thus held that, despite Washington's ten-year limit for Class B felonies, the maximum sentence to which Blakely could be exposed was the 53-month upper limit of the standard range applicable to the sub-class that included Blakely's particular offense. In other words, the sentence could only be based upon the facts supported by the guilty plea. Once the trial court considered additional facts for purposes of increasing Blakely's sentence beyond the maximum amount supported by the guilty plea, the court violated Blakely'sSixth Amendment right to a trial by jury.
 {¶ 11} Ohio does not employ such a grid system. In Ohio, judges have discretion to sentence anywhere within a range based upon the degree of the felony of conviction. Ohio utilizes only one set of minimum and maximum sentences for each class of felony, as opposed to prescribed ranges for particular offenses within each class of felony. See R.C.2929.14(A). The majority in Blakely made clear that its decision does not implicate indeterminate sentencing schemes like Ohio's because such schemes do not invade the province of the jury as determiner of guilt. Put another way, the jury determines the maximum punishment to which a defendant may be exposed and, thereafter, the judge may impose any sentence he or she finds appropriate, so long as it does not exceed the maximum punishment available for the offense of which the jury found the defendant guilty:
[T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.
Blakely, supra, at 2540. (Emphasis sic.)
 {¶ 12} Ohio's sentencing scheme does not encroach upon the traditional and constitutionally required role of the jury in finding those facts that fix the upper limit of a defendant's punishment for a particular offense. Rather, the upper limit, or in Blakely terms, the "statutory maximum" sentence to which one accused of a felony knows he will be exposed upon walking through the courtroom door, is established by statute. R.C. 2929.14(B) does not allow judge-made findings to enhance a defendant's punishment beyond the maximum sentence corresponding to the class of offense of which he is convicted or to which he pleads guilty. In other words, in finding appellant guilty of 35 of the offenses alleged in the indictments, the jury found that each and every one of such allegations had been proven beyond a reasonable doubt; and these findings of fact were all that was required to authorize the imposition of a sentence, for each conviction, falling anywhere within the range prescribed therefor by R.C. 2929.14(A).
 {¶ 13} As the United States Supreme Court held in Harris v.United States (2002), 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524, "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jurytrial, and reasonable-doubt components of the Fifth and Sixth Amendments." Id. at 558. The court recently reaffirmed this principle in the case of United States v.Booker (2005), 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621. In Booker,
the court reaffirmed the syllabus of Apprendi but also held, "when a trial judge exercises his [or her] discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id. (Slip op. at 9.)
 {¶ 14} Unlike the "standard range" statute in Blakely, R.C. 2929.14(B) does not lower the ceiling for felony sentences initially established by R.C. 2929.14(A). Furthermore, it does not "expose a defendant to a punishment greater than that otherwise legally prescribed," Apprendi v.New Jersey (2000), 530 U.S. 466, 483, 120 S.Ct. 2348, 147 L.Ed.2d 435, n. 10, nor does it "create a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it * * *."Harris, supra, at 559.
 {¶ 15} R.C. 2929.14(B) is not a reduction of the statutory maximum for the offense of conviction, such as was the Washington statute prescribing the "standard range" for the offense in Blakely. This state's highest court has not deemed R.C. 2929.14(B) to mandate that the minimum sentence be imposed on offenders who have never before served a prison term. The Supreme Court of Ohio "construe[s] [R.C. 2929.14(B)] to mean that unless
a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." State v. Edmonson (1999), 86 Ohio St.3d 324, 326,715 N.E.2d 131. (Emphasis added.) The Fifth Appellate District has characterized R.C. 2929.14(B) as a "suggestion of appropriateness of the shortest authorized prison term." State v. Henry, 5th Dist. No. 2004-CAA-06-047, 2004-Ohio-6711, ¶ 15. (Emphasis added.) The First Appellate District has likewise interpreted R.C. 2929.14(B) to mean that "the minimum sentence must be the starting point when imposing a prison sentence on an offender who has not previously been to prison. But it is not required that a trial court impose the minimum sentence." State v.Eckstein, 1st Dist. No. C-030139, 2004-Ohio-5059, ¶ 23. (Emphasis added.) But cf. State v. Bruce, 1st Dist. No. C-040421, 2005-Ohio-373
(holding that the "statutory maximum" for Apprendi purposes is not
synonymous with the upper limit of the range of years of imprisonment set by the General Assembly for each felony of conviction).
 {¶ 16} This "suggestion of appropriateness," "starting point" or preference, seeks to ensure that sentencing courts remain "guided by the overriding purposes of felony sentencing." R.C. 2929.11(A). "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." Ibid. Sentencing courts are required, in the exercise of the discretion conferred by R.C. 2929.12(A), to fashion sanctions consistent with these two overriding purposes. The sanction must also be appropriate to the full array of circumstances of the offense as the same fall in the spectrum of similar crimes committed by those similarly situated. R.C.2929.11(B) provides:
A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
The General Assembly has further specified:
Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11
of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.
R.C. 2929.12(A).
 {¶ 17} "[A]s [the Court in] Apprendi noted, `[there is] nothing * * * [that] suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment within the range.'" Harrisv. United States (2002), 536 U.S. 545, 565, 122 S.Ct. 2406, 153 L.Ed.2d 524, quoting Apprendi, supra, at 481. (Emphasis sic.) So long as these "factors" do not elevate the defendant's punishment beyond the maximum supported by the jury's verdict or the defendant's guilty plea (in Ohio this means the maximum sentence available for the particular class of the felony of conviction), then they remain that which they have always been — penological considerations appropriately consigned to judges. They are not elements of a crime, which, of course, must be found by a jury beyond a reasonable doubt.
 {¶ 18} As the Harris court further explained:
Whether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge * * * chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries — and without contradictingApprendi.
Id. at 565.
 {¶ 19} "[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." Williams
v. New York (1949), 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L. Ed. 1337. Under modern statutes, "judges exercise their sentencing discretion through `an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.'" Harris, supra, at 558, quoting United States v. Tucker (1972),404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592. The United States Supreme Court has recognized that this process is constitutional, and that the facts taken into consideration need not be alleged in the indictment or proved beyond a reasonable doubt. See, e.g., United States v. Watts
(1997), 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554, (per curiam);Nichols v. United States (1994), 511 U.S. 738, 747, 114 S.Ct. 1921,128 L.Ed.2d 745; Williams, supra, at 246.
 {¶ 20} This brings us to the "constitutionally novel and elusive distinction between `elements' and `sentencing factors'" discussed by the United States Supreme Court in Apprendi. The majority held that the proper inquiry "is not one of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Apprendi, at 494. A sentencing factor "describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense." Ibid., n. 19.
 {¶ 21} These notions underscore the respective roles of judge and jury. "[T]he function of the indictment and jury ha[s] been to authorize the State to impose punishment." Harris, supra, at 564. That is, the jury plays the crucial role of guiltdeterminer. When the jury finds all the facts necessary to conclude that a particular offense has been committed, it has authorized any punishment within the range set by statute for that offense. The judge's role in sentencing, then, "is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition `elements' of a separate legal offense." Apprendi, supra, at 483, n. 10.
 {¶ 22} Applying the foregoing standards to the sentencing factors used in the court's imposition of non-minimum sentences upon appellant, we note that the jury's verdict authorized a potential prison term of up to ten years for each of the 28 first-degree felony counts, up to eight years for each of the two second-degree felony counts, and up to 18 months for each of the five fourth-degree felony counts. Thus, the maximum prison sentence authorized by the jury's verdict (exclusive of additional terms of actual incarceration for the firearm specifications, notwithstanding the application of merger and other applicable doctrines, and assuming all unmerged counts were ordered to be served consecutively) was 303.5 years.
 {¶ 23} Appellant received sentences of five years in some cases, and nine years in other cases, on the first-degree felony counts. He received three years for each of the second-degree felony counts. Finally, he received 17 months for each of the fourthdegree felony counts. Appellant's aggregate sentence, exclusive of additional actual terms of incarceration for the firearm specifications (which were alleged in the indictment and found by the jury) was 160 years, five months. Clearly, appellant was not subjected to a greater punishment than was authorized by the jury's verdict, either as to any individual count or in the aggregate.
 {¶ 24} This situation is unlike that in Apprendi, where a defendant was indicted and convicted of a particular offense and was then exposed to an additional penalty not encompassed by the indictment. Nor are the facts of this case akin to those of Blakely, where the defendant pled guilty to a particular offense as part of a plea agreement, and then was sentenced as if he had pled to a more serious crime carrying a greater penalty because the sentencing judge found a fact that, in substance, constituted the one missing element of the more serious crime, in effect convicting the defendant of that crime without a supporting plea or a jury verdict. Rather, that the trial court was required to make seriousness- and recidivism-related findings when imposing non-minimum sentences upon appellant, underscores the fact that R.C. 2929.14(B) codifies sentencing factors, not elements. Sentencing factors traditionally operate to "constrain, rather than extend, the sentencing judge's discretion." Harris, supra, at 554. The findings the trial judge made in the present case operate in just such a manner. Thus, they are appropriately deemed sentencing factors and were not required to be proved beyond a reasonable doubt to the jury. The fact that these findings brought about the imposition of non-minimum sentences does not render them elements of a criminal offense.
 {¶ 25} We find further assistance in determining whether a fact must be proved beyond a reasonable doubt, or whether it may be used as a sentencing factor, from the case of Patterson v. New York (1977),432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281. In Patterson, the United States Supreme Court rejected the notion that whenever the severity of punishment is linked to "the presence or absence of an identified fact" such a fact must be proved beyond a reasonable doubt. Id. at 214. Rather, the state legislature's definition of the elements of the offense is usually dispositive of the question whether a fact must be proven to this heightened standard. "[The] Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." Id. at 210.
 {¶ 26} Applying this test to the present case, it is clear that the fact that "the shortest prison term will demean the seriousness of the offender's conduct" or "will not adequately protect the public from future crime by the offender or others"[2] are not elements of any of the crimes for which appellant was convicted, i.e., rape, kidnapping, aggravated robbery, gross sexual imposition, felonious assault or theft. As with other aggravating sentencing factors, the foregoing findings "up the ante" for the defendant, or they would not be challenged here. However, they do so "only * * * by raising the minimum sentence that may be imposed by the trial court,"[3] not by impermissibly raising the "relevant statutory maximum" sentence as the trial court had done inBlakely.
 {¶ 27} By enacting R.C. 2929.14(B), the Ohio General Assembly did not change the definition of any existing offense. It simply conferred favored status upon minimum sentences for first-time imprisonment, and provided directives to guide the use of factors that have always been considered by sentencing courts to bear upon the appropriateness of a particular punishment, i.e., "the seriousness of the offender's conduct"[4] and the need to "adequately protect the public from future crime by the offender or others."[5] As the Supreme Court of Ohio has noted, "in enacting the new sentencing laws, the General Assembly only sought to confirm that * * * judges considered certain factors and presumptions to confirm that the court's decision-making process included all of the statutorily required sentencing onsiderations." State v. Edmonson
(1999), 86 Ohio St.3d 324, 327, 715 N.E.2d 131.[6] The legislature's "decision to do so has not transformed against its will a sentencing factor into an `element' of some hypothetical `offense.'" McMillan v.Pennsylvania (1986), 477 U.S. 79, 90, 106 S.Ct. 2411, 91 L.Ed.2d 67.
 {¶ 28} Seriousness and recidivism factors "have been the traditional domain of judges; they have not been alleged in the indictment or proved beyond a reasonable doubt." United States v. Harris (2002), 536 U.S. 545,560, 122 S.Ct. 2406, 153 L.Ed.2d 524. "Traditional sentencing factors often involve either characteristics of the offender, such as recidivism,[7] or special features of the manner in which a basic crime was carried out (e.g., that the defendant abused a position of trust or brandished a gun)." Castillo v. United States (2000), 530 U.S. 120, 126,120 S.Ct. 2090, 147 L.Ed.2d 94. "There is no reason to believe that those who framed the Fifth and Sixth Amendments would have thought of [serious and recidivism factors] as the elements of the crime." Harris, supra, at 560.
Since sentencing ranges came into use, defendants have not been able to predict from the face of the indictment precisely what their sentence will be; the charged facts have simply made them aware of the "heaviest punishment" they face if convicted. Judges, in turn, have always considered uncharged "aggravating circumstances" that, while increasing the defendant's punishment, have not "swelled the penalty above what the law has provided for the acts charged." * * * [T]he legislature's choice to entrust [these considerations] to the judge does not implicate the "competition . . . between judge and jury over . . . their respective roles," that is the central concern of the Fifth and Sixth Amendments.
Id. at 562. (Citations omitted.)
 {¶ 29} At issue in Apprendi and Blakely were, by contrast, sentencing factors that did "swell the penalty above what the law provided," to wit: racial bias motivation and deliberate cruelty, respectively. These "factors" thus functioned like elements and their use violated the defendants' Sixth Amendment rights when not found by a jury beyond a reasonable doubt. Contrarily, the factors involved in the imposition of appellant's nonminimum sentences did not enlarge appellant's penalty for any offense beyond the maximum authorized by the jury's verdict. As such, their use was not violative of appellant's Sixth Amendment right to a trial by jury.
 {¶ 30} The consecutive sentences imposed in this case likewise do not run afoul of Apprendi, Blakely, or the Sixth Amendment. The federal courts have consistently held that the imposition of consecutive sentences does not violate the Sixth Amendment so long as the individual sentence for each count does not exceed the statutory maximum for the corresponding offense. See, e.g., United States v. Feola (C.A.2, 2001),275 F.3d 216, 220; United States v. McWaine (C.A.5, 2002), 290 F.3d 269,275-276; United States v. Pressley (C.A.11, 2003), 345 F.3d 1205, 1213;United States v. Wingo (C.A.6, 2003), 76 Fed. Appx. 30; United Statesv. Sauceda (C.A.6, 2002), 46 Fed. Appx. 322. Ohio courts of appeals have agreed. See, e.g., State v. Taylor, 8th Dist. No. 83551, 2004-Ohio-4468; State v. Wilson, 6th Dist. No. L-01-1196, 2002-Ohio-5920;State v. Gambrel, 2nd Dist. No. 2000-CA-29; State v. Taylor, 11th
Dist. No. 2003-L-165, 2004-Ohio-5939; State v. Carter, 6th Dist. No. L-00-1082, 2002-Ohio-3433.
 {¶ 31} For all of the foregoing reasons, we find appellant's sentence was lawfully imposed. Appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Also, on that date, the court held a sexual predator hearing pursuant to R.C. 2950.09(B)(1), at the conclusion of which the court determined that appellant is a sexual predator as defined by R.C.2950.01(E).
[2] R.C. 2929.14(B)(2).
[3] McMillan v. Pennsylvania (1986), 477 U.S. 79, 89, 106 S.Ct. 2411,91 L.Ed.2d 67.
[4] R.C. 2929.14(B)(2).
[5] Ibid.
[6] These seriousness and recidivism factors, enumerated at R.C.2929.12(B) through (E), include factors relating to the injury suffered by the victim; the age of the victim; the offender's use or abuse, in connection with the offense, of any position of trust or authority; the offender's motivation by racial or other prejudice; victim provocation; the offender's previous delinquency adjudications and/or criminal convictions or lack thereof; the offender's pattern of drug or alcohol abuse; and any demonstrated remorse or lack thereof.
[7] "Recidivism * * * is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."Almendarez-Torres v. United States (1998), 523 U.S. 224, 243,118 S.Ct. 1219, 140 L.Ed.2d 350.