OPINION
{¶ 1} Defendant-appellant, Clifton A. Satterwhite, appeals from the judgments of the Franklin County Court of Common Pleas whereby appellant pled guilty to attempted carrying a concealed weapon in case No. 04CR01-86, and a jury convicted appellant of four counts of aggravated robbery; three counts of kidnapping; four counts of second-degree felony robbery; and four counts of third-degree felony robbery, all with firearm specifications, in case No. 03CR11-7642.
 {¶ 2} In case No. 04CR01-86, the Franklin County Grand Jury indicted appellant for carrying a concealed weapon, a fourth-degree felony, in violation of R.C. 2923.12. The charge stems from appellant concealing a firearm at an Auto Zone store on September 3, 2003.
 {¶ 3} In case No. 03CR11-7642, the Franklin County Grand Jury indicted appellant on: (1) four counts of aggravated robbery, first-degree felonies, in violation of R.C. 2911.01; (2) four counts of robbery, second-degree felonies, in violation of R.C. 2911.02; (3) four counts of robbery, third-degree felonies, in violation of R.C. 2911.02; and (4) three counts of kidnapping, first-degree felonies, in violation of R.C.2905.01. The counts contained specifications for appellant possessing and brandishing a firearm, pursuant to R.C. 2941.141 and 2941.145, respectively. The charges stem from appellant and a co-defendant robbing an Advance Auto Parts store and its employees Patrick Reitter, Daniel Sindledecker, and Dwayne Bryant on October 3, 2003.
 {¶ 4} Appellant pled not guilty to the October 3, 2003 incident and filed a motion to suppress testimony concerning a pre-trial photo array where Reitter and Sindledecker identified appellant as one of two individuals involved in the robbery. The motion did not concern Bryant, who was unable to identify appellant from the photo array. The trial court denied appellant's motion and allowed testimony that Reitter and Sindledecker identified appellant in the photo array.
 {¶ 5} Thereafter, a jury trial commenced, and Reitter and Sindledecker testified that they identified appellant in the photo array as one of two individuals involved in the October 3, 2003 robbery. Reitter, Sindledecker, and Bryant also made in-court identifications of appellant as an individual involved in the robbery. In addition, the employees testified that appellant did not wear a mask over his face during the robbery and that the incident took place in the daytime, around 10:00 a.m. Furthermore, the employees testified that appellant had a firearm. Reitter and Sindledecker specified that appellant held the firearm in his left hand, the same hand that appellant used to write during trial.
 {¶ 6} Reitter also testified that appellant came into the Advance Auto Parts store through an exit door. In the course of events, according to Reitter, appellant forced him, Sindledecker, and Bryant into a restroom. Reitter testified that appellant subsequently directed him at gunpoint out of the restroom and had him give appellant money from the cash registers. Reitter also mentioned that appellant proceeded to take money from the cash box in the safe. Afterward, Reitter noted that appellant's accomplice put Reitter into a separate restroom and took his wallet.
 {¶ 7} Sindledecker testified that he first noticed appellant when appellant and Reitter were walking toward him. Sindledecker said that he "looked at [appellant's] face first. Then I saw the revolver in his left hand, pointing right at my stomach." (Vol. I Tr. at 174.) Sindledecker noted that appellant was "within arm's reach." Id. Consequently, Sindledecker testified that he obtained a "good look" at appellant and that he remembered appellant's "distinctive" cheekbones. (Vol. I Tr. at 181.) Next, Sindledecker testified that appellant forced him, Reitter, and Bryant into a restroom and that appellant took Sindledecker's wallet. According to Sindledecker, appellant's accomplice then stood by the restroom while appellant was subsequently with Reitter.
 {¶ 8} Bryant testified that he first noticed appellant walking toward him with Reitter and Sindledecker. Bryant stated that he made eye contact with appellant and that appellant "started to" point the firearm toward him. (Vol. I Tr. at 206.) Next, Bryant testified that appellant forced him, Reitter and Sindledecker into a restroom. Bryant then noted that the robbers took his wallet. Bryant also testified that appellant's accomplice stood by the restroom while appellant was subsequently with Reitter. Lastly, Bryant confirmed that he was unable to identify appellant out of the photo array "[j]ust for the fact that [the photo array] was not in color." (Vol. I Tr. at 216.) However, Bryant testified that he could identify appellant in court because appellant's "features are clearer in person" and because Bryant obtained "a pretty * * * good look at [appellant], from making eye contact" and "looking at [appellant's] face." Id.
 {¶ 9} Columbus Police latent fingerprint examiner Robert Lawson testified that the cash box from the Advance Auto Parts store contained appellant's fingerprint. Columbus Police latent fingerprint examiner Paul Bivens also testified that appellant's fingerprint was on the cash box.
 {¶ 10} Clifford Tiller is appellant's father and testified on appellant's behalf. Tiller stated that, on the morning of October 3, 2003, appellant was at Tiller's home, "lying on the living room couch." (Vol. II Tr. at 22.) However, Tiller testified that he never told law enforcement about this alibi information. Furthermore, Tiller admitted that he has prior convictions for receiving stolen property in 1992, and robbery in 1994. Lastly, Tiller admitted that he previously told the prosecution that he could not remember the month or date that appellant would have been on the living room couch at Tiller's home.
 {¶ 11} Thereafter, the jury deliberated and found appellant guilty as charged. At sentencing, the trial court merged the firearm specifications. Additionally, the trial court merged: (1) the robbery charges in Counts 5 and 9 into the first-degree felony aggravated robbery charge in Count 1; (2) the robbery charges in Counts 6 and 10 into the second-degree felony robbery charge in Count 2; (3) the kidnapping charges in Counts 7 and 11 into the third-degree felony robbery charge in Count 3; and (4) the aggravated robbery charges in Counts 8 and 12 into the first-degree felony aggravated robbery charge in Count 4.
 {¶ 12} Also at the sentencing hearing, the trial court recognized appellant's prior criminal record. The trial court mentioned that appellant has juvenile delinquent adjudications for carrying a concealed weapon, breaking and entering and "a lot of receiving stolen properties." (Vol. III Tr. at 22.) The trial court also mentioned appellant's adult criminal record, which includes several receiving stolen property convictions and offenses for fleeing and failure to appear. Appellant served imprisonment for one of the receiving stolen property offenses and for the failure to appear offense.
 {¶ 13} The trial court proceeded to impose four years imprisonment on each of the merged offenses: (1) Count 1, aggravated robbery; (2) Count 2, robbery; (3) Count 3, robbery; and (4) Count 4, aggravated robbery. The trial court also imposed four years imprisonment on each of the remaining offenses: (1) Count 13, robbery, a second-degree felony; (2) Count 14, robbery, a third-degree felony; and (3) Count 15, kidnapping, a first-degree felony. The trial court imposed more than the minimum authorized prison sentence on these offenses, noting that appellant has previously been in prison. The trial court also imposed three years imprisonment on the merged firearm specification.
 {¶ 14} The trial court ordered appellant to serve the sentences on Counts 1, 13, 14, and 15 concurrently. The trial court ordered appellant to serve the sentences on Counts 2, 3, and 4 "consecutively with each other and concurrently with counts one, thirteen, fourteen, and fifteen." The trial court also ordered appellant to serve the firearm specification sentence "consecutively with all counts on which [appellant] is sentenced." Id.
 {¶ 15} As for the carrying a concealed weapon charge in case No. 04CR01-86, appellant pled guilty to attempted carrying a concealed weapon, a fifth-degree felony. The trial court imposed the maximum authorized prison sentence on the offense, 12 months, reasoning that "this was the worst form of the offense" and that appellant poses "the greatest likelihood of committing future crimes." (Vol. III Tr. at 25.) The trial court ordered appellant to serve the sentence consecutive to the sentences in case No. 03CR11-7642.
 {¶ 16} Appellant appeals, raising two assignments of error:
[1.] The trial court erred when it sentenced appellant to consecutive sentences and to a maximum sentence based upon facts not found by a jury or admitted by appellant.
[2.] The jury verdicts of guilty were against the manifest weight of the evidence.
 {¶ 17} Appellant's first assignment of error concerns his prison sentences. As noted above, the trial court imposed four years imprisonment on each of appellant's convictions in case No. 03CR11-7642 for: (1) aggravated robbery, Counts 1 and 4, first-degree felonies; (2) robbery, Counts 2 and 13, second-degree felonies, and Counts 3 and 14, third-degree felonies; and (3) kidnapping, Count 15, a first-degree felony. These four-year prison sentences exceed the minimum authorized sentence of three years for first-degree felonies, two years for second-degree felonies, and one year for third-degree felonies. R.C.2929.14(A). However, the four-year prison sentences do not exceed the maximum authorized sentence of ten years for first-degree felonies, eight years for second-degree felonies, and five years for third-degree felonies. Id. The trial court imposed the maximum authorized sentence, 12 months, for appellant's fifthdegree felony conviction of attempted carrying a concealed weapon in case No. 04CR01-86. See R.C. 2929.14(A).
 {¶ 18} In challenging his sentences, appellant first contends that the trial court erred by imposing more than the minimum authorized prison sentences for the above convictions in case No. 03CR11-7642 and the maximum prison sentence in case No. 04CR01-86. Under Ohio's felony sentencing statutes, a trial court electing to impose a prison sentence must impose the minimum authorized prison sentence unless: (1) the defendant was serving a prison term at the time of the offense or had previously served a prison term, or (2) "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). Additionally, R.C.2929.14(C) authorizes a trial court to impose the maximum authorized prison sentence on defendants who "committed the worst forms of the offense" or "who pose the greatest likelihood of committing future crimes[.]"
 {¶ 19} Appellant argues that his Sixth Amendment right to a jury trial prohibits a trial court from imposing more than the minimum authorized prison sentence without the jury finding or appellant admitting to the factors in R.C. 2929.14(B) and (C). In support, appellant relies onBlakely v. Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, and Apprendiv. New Jersey (2000), 530 U.S. 466. In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Otherwise, the sentence violates a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution and Fourteenth Amendment due process guarantees.Apprendi at 476-478, 497. In Blakely, the United States Supreme Court defined "`statutory maximum' for Apprendi purposes" as "the maximum sentence a judge may impose solely on the basis of the facts reflected inthe jury verdict or admitted by the defendant." (Emphasis sic.) Blakely
at 2537.
 {¶ 20} Appellant's arguments are in accord with State v. Montgomery,159 Ohio App.3d 752, 2005-Ohio-1018. In Montgomery, the First District Court of Appeals held that, pursuant to Apprendi and Blakely, Ohio's felony sentencing statutes "are unconstitutional to the extent that the statutes allow a trial court to increase" a defendant's sentence above the minimum authorized sentence "in the absence of jury findings or admissions by the defendant." Id. at ¶ 14.
 {¶ 21} Nonetheless, we reject appellant's contentions based on our decision in State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522. In Abdul-Mumin, we concluded that Apprendi and Blakely do not prohibit a trial court from imposing a non-minimum prison sentence under Ohio's felony sentencing statutes even though the sentencing statutes do not require the jury to find or the defendant to admit to the applicable statutory factors that allow a trial court to impose a sentence above the authorized minimum. Id. at ¶ 29.
 {¶ 22} As the Twelfth District Court of Appeals stated, Ohio's felony sentencing statutes "`involve guidance for determining the impact of a sentence on public protection and proportionality — determinations that have always been made by a judge in deciding fairness and necessity of a sentence. Those are decisions that have never been consigned to juries and, thus, are not governed by the Sixth and Fourteenth Amendments to the United States Constitution[,]'" the constitutional principles underlyingBlakely and Apprendi. State v. Berry, 159 Ohio App.3d 476,2004-Ohio-6027, at ¶ 40, quoting Griffin Katz, Ohio Felony Sentencing Law (2004), 482, Section 2:22; see, also Abdul-Mumin at ¶ 32 (Klatt, J., concurring) (emphasizing that "it has always been the province of the judge, not the jury, to determine the impact of a sentence on public protection and proportionality").
 {¶ 23} Accordingly, we previously concluded that, under Ohio's felony sentencing statutes, "[a]s long as a court sentences a defendant to a prison term within the stated minimum and maximum terms permitted by law, * * * Blakely and Apprendi are not implicated." State v. Sieng, Franklin App. No. 04AP-556, 2005-Ohio-1003, at ¶ 38. Here, the trial court sentenced appellant within the standard sentencing ranges. Thus, in accordance with Abdul-Mumin and Sieng, we conclude that Blakely andApprendi did not preclude the trial court from imposing non-minimum prison sentences in case No. 03CR11-7642 and the maximum prison sentence in case No. 04CR01-86.
 {¶ 24} We further reject appellant's contentions because his prior criminal record supports his non-minimum and maximum sentences, andApprendi and Blakely specifically exclude from its holding a sentence based on a defendant's prior record. See Apprendi at 490; Blakely at 2536. A defendant's prior record signifies recidivism, a "`traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.'" Jones v. United States (1999), 526 U.S. 227, 249, quoting Almendarez-Torres v. United States (1998), 523 U.S. 224, 245. Consequently, despite its holding in Montgomery, the First District Court of Appeals has upheld trial courts utilizing a defendant's prior criminal record to impose non-minimum sentences, including a maximum prison sentence, even though the trial court also utilized other nonrecidivism factors to support the increased sentence. State v. Lowery,160 Ohio App.3d 138, 2005-Ohio-1181, at ¶ 43, 46 (noting that "Apprendi and Blakely specifically allow a sentencing court to consider a defendant's prior convictions without resubmitting the fact of those convictions to the jury"); State v. McIntosh, Hamilton App. No. C-040280, 2005-Ohio-1760, at ¶ 10 (recognizing that "Blakely permits the fact of a prior conviction to support an enhanced sentence").
 {¶ 25} Here, appellant previously served a prison sentence, a factor under R.C. 2929.14(B) that allows the trial court to impose non-minimum prison sentences. Likewise, appellant's criminal record supports the trial court's R.C. 2929.14(C) finding that appellant poses the "greatest likelihood of committing future crimes," a factor that allows for a maximum prison sentence. See State v. Brown (Nov. 30, 1999), Franklin App. No. 98AP-1581 (recognizing that a defendant's sizeable criminal record demonstrates the "greatest likelihood of committing future crimes" factor in R.C. 2929.14[C]).
 {¶ 26} We recognize that the trial court considered appellant's juvenile record when sentencing him and that the appellate court inMontgomery held that a trial court could not use prior juvenile delinquency adjudications to increase a sentence under the exception noted in Blakely and Apprendi. See Montgomery at ¶ 13. However, Ohio's felony sentencing statutes specifically allow the trial court to consider juvenile adjudications when it determines recidivism. Pursuant to R.C.2929.12(D)(2) and (3), factors that indicate that an offender "is likely to commit future crimes" include that "[t]he offender previously was adjudicated a delinquent child" and "[t]he offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child." Thus, a defendant's juvenile record is "relevant to the issue of likelihood of recidivism." See State v. Warman, Franklin App. No. 03AP-216, 2003-Ohio-5035, at ¶ 18 (reviewing a defendant's sexual predator adjudication, i.e., his likelihood of committing future sex offenses); see, also, State v. McNeal, Allen App. No. 1-01-158, 2002-Ohio-2981, at ¶ 61-62 (concluding that the trial court properly found that a defendant posed the "greatest likelihood of recidivism" to warrant a maximum prison sentence under R.C. 2929.14(C) based on the defendant's "continuing course of criminal conduct since his first offense as a juvenile in 1986").
 {¶ 27} Nonetheless, even without appellant's juvenile record, his "greatest likelihood of committing future crimes" under R.C. 2929.14(C) stems from his adult criminal record, which includes several receiving stolen property convictions and offenses for fleeing and failure to appear. Brown. Accordingly, as Lowery and McIntosh recognize, the trial court did not implicate Apprendi and Blakely by imposing nonminimum sentences, including a maximum sentence, due to appellant's prior criminal record.
 {¶ 28} We conclude as such even though, as appellant asserts, the trial court imposed the maximum sentence on the attempted carrying a concealed weapon conviction because it also concluded that appellant committed "the worst form of the offense," an alternative factor under R.C. 2929.14(C). (Vol. III Tr. at 25.) Again, appellant's prior criminal record constituted a legitimate factor under Blakely and Apprendi that allowed the trial court to impose the maximum sentence. See Apprendi at 490; Blakely at 2536; Lowery at ¶ 46. Moreover, as above, Blakely andApprendi did not require the jury to find or appellant to admit to the R.C. 2929.14(C) "worst form" factor. See Abdul-Mumin at ¶ 29; Sieng at ¶ 38. Thus, the trial court's alternative basis for imposing the maximum prison sentence did not implicate Blakely and Apprendi.
 {¶ 29} Appellant also challenges his consecutive sentences underBlakely and Apprendi. R.C. 2929.14(E)(4) governs when trial courts may impose consecutive sentences and states, in pertinent part:
(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
(b) * * * [T]he harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 30} In challenging his consecutive sentences, appellant relies onState v. Moore, Cuyahoga App. No. 83653, 2004-Ohio-5383. In Moore, the Eighth District Court of Appeals held that, under Blakely and Apprendi,
the trial court "could impose consecutive sentences only by making judicial findings beyond those either determined by a jury or stipulated to by the defendant." Moore at ¶ 19. Thus, the appellate court vacated the defendant's consecutive sentences because the defendant did not admit to the R.C. 2929.14(E)(4) findings "or otherwise waive his constitutional right to have these facts determined by a jury." Moore at ¶ 19.
 {¶ 31} However, appellant's reliance on Moore is misplaced. InAbdul-Mumin, we held that consecutive sentences do not implicateApprendi and Blakely. Abdul-Mumin at ¶ 30. Rather, we recognized that federal courts have consistently upheld consecutive sentences under constitutional scrutiny where, as here, "the individual sentence for each count does not exceed the statutory maximum for the corresponding offense." Id. Similarly, since Moore, the Eighth District Court of Appeals held that "the findings required under R.C. 2929.14(E)(4) * * * for imposing consecutive sentences do not violate an offender's Sixth
Amendment right to a trial by jury as construed in Blakely." State v.Lett, Cuyahoga App. No. 84707, 2005-Ohio-2665, at ¶ 47. "[C]onsecutive sentences in Ohio have never been considered `additional' punishment for guilt; therefore, any findings made by the court would not implicateBlakely." Id. at ¶ 40.
 {¶ 32} Therefore, we conclude that the trial court did not sentence appellant in contravention of Apprendi and Blakely, or appellant's Sixth
Amendment right to a jury trial or his Fourteenth Amendment due process rights. Accordingly, we overrule appellant's first assignment of error.
 {¶ 33} In his second assignment of error, appellant contends that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 34} In determining whether a verdict is against the manifest of the evidence, we sit as a "thirteenth juror." State v. Thompkins (1997),78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quotingMartin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 35} In claiming that his convictions are against the manifest weight of the evidence, appellant argues against the reliability of Reitter, Sindledecker, and Bryant's in-court identifications, and Reitter and Sindledecker's photo array identifications. Appellant claims that the employees had limited time to observe the perpetrators. "[T]he capacity and opportunity of the witness to observe the defendant" is relevant in appraising a witness identification. State v. Guster (1981),66 Ohio St.2d 266, 267, fn. 1, citing United States v. Telfaire
(C.A.D.C. 1972), 469 F.2d 552, 558-559. Here, Reitter, Sindledecker, and Bryant had ample opportunity to observe appellant, who robbed the store in the daytime without wearing any mask to disguise his face. Likewise, the employees came in close contact with appellant and gave descriptive accounts of their encounter with appellant.
 {¶ 36} In particular, Reitter observed appellant walking into the store through an exit door and noticed that appellant carried a firearm. Appellant held the firearm with his left hand, the hand that appellant wrote with during trial. In addition, appellant held Reitter at gunpoint as appellant forced Reitter to give him money from the safe and cash registers.
 {¶ 37} Sindledecker noticed that appellant had a firearm "pointing right at [Sindledecker's] stomach." (Vol. I Tr. at 174.) Sindledecker looked directly at appellant's face because appellant was "within arm's reach." Id. Thus, Sindledecker obtained "a good look" at appellant and remembered appellant's "distinctive" cheekbones. (Vol. I Tr. at 181.)
 {¶ 38} Bryant also saw appellant's firearm as appellant "started to" point the firearm toward him. (Vol. I Tr. at 206.) Bryant's inability to identify appellant at the photo array does not discount his in-court identification. As noted above, Bryant was unable to identify appellant out of the photo array "[j]ust for the fact that [the photo array] was not in color." (Vol. I Tr. at 216.) However, Bryant was able to identify appellant in court because appellant's "features are clearer in person" and because Bryant obtained "a pretty * * * good look at [appellant], from making eye-contact" and "looking at [appellant's] face." Id.
 {¶ 39} Moreover, as appellant concedes, two fingerprint experts identified the fingerprint on the cash box as appellant's. This fingerprint evidence provides additional physical evidence to support Reitter, Sindledecker, and Bryant's identifications.
 {¶ 40} Accordingly, we conclude that appellant's convictions are not against the manifest weight of the evidence. Thus, we overrule appellant's second assignment of error.
 {¶ 41} In summary, we overrule appellant's first and second assignments of error, and we affirm the judgments of the Franklin County Court of Common Pleas.
Judgments affirmed.
Brown, P.J., and Klatt, J., Concur.