OPINION
{¶ 1} Defendant-appellant, Virsna Sieng, appeals from a judgment of the Franklin County Court of Common Pleas, pursuant to a jury verdict, finding him guilty of trafficking in cocaine, in violation of R.C. 2925.03. Because the trial court committed no error warranting reversal, sufficient evidence and the manifest weight of the evidence support the trial court's judgment, and defendant's sentence is not contrary to law, we affirm.
 {¶ 2} Pursuant to indictment, defendant was charged with trafficking in cocaine in an amount equal to or exceeding 100 grams but less than 500 grams. R.C. 2925.03(C)(4)(e). The jury convicted defendant as charged; the trial court sentenced defendant to a seven-year prison term and imposed a mandatory $15,000 fine. By supplemental entry, the court denied defendant's request for waiver of the fine. Defendant appeals, assigning the following errors:
Assignment of Error No. 1:
Defendant-Appellant was deprived of his right to due process and a reliable jury determination as to each and every element of the charged crime under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 5, 10
and 16 as a result of (a) the trial court's refusal to instruct the jury in accordance with 4 O.J.I. § 525.03(3) that the term "offer" as used in R.C. 2925.03(A)(1) (the trafficking in drugs statute) means "to present for acceptance or rejection," (b) its giving of an incomplete instruction that permitted the jury to convict him of trafficking in drugs upon mere proof of an oral declaration of a readiness or willingness to sell a controlled substance, and (c) the prosecutor's improper argument to the jury that Defendant-Appellant had made a full confession to the crime of trafficking in cocaine when he testified in court that he used the false pretense of a drug deal solely for the purpose of creating a ruse to rob the police informant.
Assignment of Error No. 2:
The following erroneous evidentiary rulings and instances of overreaching by the prosecutor, separately and/or in combination, violated Defendant-Appellant's right to due process and a fundamentally jury fair trial [sic] under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 10 and 16: (a) the admission of expensive gaudy jewelry taken from Defendant-Appellant at the time of his arrest and a photograph of him wearing the jewelry for the sole purpose of portraying him as a stereotypical drug dealer, (b) the prosecutor's patently improper question to Defendant-Appellant whether his in-court explanation of events was the first time he told his "story" to a law enforcement officer, and (c) the exclusion of evidence that explained why Defendant-Appellant had an honestly held belief that the police had conspired against him.
Assignment of Error No. 3:
Defendant-Appellant's conviction for trafficking in cocaine is not supported by evidence sufficient to satisfy the requirements of due process under U.S. Const. Amend. V and XIV; or, alternatively, is against the manifest weight of the evidence.
Assignment of Error No. 4:
The trial court's decision to sentence Defendant-Appellant to a seven year prison term for trafficking in cocaine was contrary to law and violated his right to presentment to a grand jury, his right to trial by jury, and his right to due process under U.S. Const. Am. V, VI and XIV
and Ohio Const. Art. I, §§ 5, 10 and 16 due to the following procedural defects: (a) the omission of an allegation in the indictment as to any of the additional facts required by R.C 2929.14(B) for the imposition of a prison term in excess of the shortest prison tem of two years for a second degree felony and (b) the lack of a jury finding as to the existence of those facts under the beyond a reasonable doubt standard.
Assignment of Error No. 5:
The trial court erred and abused its discretion when it imposed a maximum fine of $15,000 as part of the sentence.
 {¶ 3} We first address defendant's third assignment of error, as it involves a discussion of the facts that will be pertinent to other assigned errors. In the assignment of error, defendant claims the jury's verdict is not supported by sufficient evidence and is against the manifest weight of the evidence. Defendant asserts the "offer to sell" element of the drug trafficking statute requires proof that the accused actually present some substance, whether controlled or counterfeit drugs, to the buyer for acceptance or rejection. Defendant contends the record is devoid of any evidence that defendant presented anything to a police informant for his purchase. Defendant argues that, at most, the evidence establishes the crime of attempted trafficking in cocaine, a third-degree felony, R.C. 2923.02, 2925.03(A)(1), (C)(4)(e).
 {¶ 4} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 5} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra;Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 6} R.C. 2925.03(A)(1) states that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." In State v. Patterson
(1982), 69 Ohio St.2d 445, 447, the Ohio Supreme Court observed that R.C. 2925.03(A)(1) establishes two offenses: (1) knowingly selling a controlled substance, and (2) knowingly offering to sell a controlled substance. Here, defendant was charged with the latter offense. The conduct proscribed in "knowingly offering" is offering to sell a controlled substance, not offering the controlled substance itself. Statev. Scott (1982), 69 Ohio St.2d 439, 440. According to the Supreme Court, an "offer to sell" means "to declare one's readiness or willingness to sell a controlled substance." Id.
 {¶ 7} The failure of the accused to present a controlled substance is not an automatic or absolute defense to a charge that a defendant made an "offer to sell" a controlled substance. Patterson, at 447. Under Ohio law, a defendant may be guilty of offering to sell a controlled substance even when no substance is produced. Id. at 450 (Holmes, J., concurring);State v. Bazzy (1993), 86 Ohio App.3d 546, 548; State v. West,
Franklin App. No. 01AP-1238, 2002-Ohio-2777, ¶ 12; State v. McKenzie
(Sept. 12, 1996), Jefferson App. No. 96-JE-2. The crime is complete when the offer is made. Scott, at 441, fn. 2, citing with approval, State v.Mosley (1977), 55 Ohio App.2d 178, 182.
 {¶ 8} The Ohio Supreme Court has refused to engraft an additional production element onto the portion of R.C. 2925.03(A)(1) that prohibits offers to sell a controlled substance. Scott, at 440. To determine whether a defendant had the requisite culpable mental state, the court advises that "[t]riers of fact should consider the totality of circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has knowingly offered to sell a controlled substance." (Emphasis added.)Patterson, at 447.
 {¶ 9} According to the state's evidence, a confidential police informant, who knew defendant for 17 or 18 years, telephoned defendant several times on March 2, 2002 to arrange the purchase of cocaine from him. The police tape recorded the telephone calls, and defendant admitted it was his voice on the tapes. In the telephone conversations, defendant agreed to sell the informant a quarter-kilogram of cocaine for $7,800 and arranged to meet the informant at a certain restaurant.
 {¶ 10} The informant, who the police wired with a listening device, drove to the restaurant's parking lot, which several officers kept under surveillance. While he was waiting for defendant, the informant again telephoned defendant; defendant this time offered to sell the informant a half-kilogram of cocaine, with the informant paying him $7,800 cash for the initial quarter-kilogram and defendant fronting the other quarterkilogram until the informant could pay him an additional $7,800 at a later date. At approximately 8:30 p.m., defendant met with the informant at the restaurant parking lot and reiterated his offer to sell the informant a half-kilogram of cocaine, with defendant fronting half that amount for later payment. Defendant made arrangements with the informant to meet him at a designated park after defendant picked up the cocaine.
 {¶ 11} A police officer that was assigned as part of the "takedown" team drove to an alley near the park where defendant and the informant were to meet. The officer and a fellow officer in the police car both wore black vests with "POLICE" written across the front. The officer testified that as defendant approached the park in a GMC Denali SUV, defendant unexpectedly drove down the alley, and his SUV came almost "nose to nose" with the police car, shining its headlights into the police car's passenger compartment. A male passenger who was in defendant's SUV testified that when defendant saw the officer's car in the alley, defendant said, "Oh, shit, the police." (Tr. 200.) Defendant stopped his vehicle, reversed out of the alley, and sped away with several police cars in pursuit.
 {¶ 12} The pursuit ended at the rear of the Hot Spot Bar on West Broad Street in Columbus. Defendant's male passenger testified that defendant instructed him to take a package that was sitting on the middle console and run into the bar. The passenger complied, and once inside the bar he gave the package to an acquaintance. A police officer whose car arrived at the bar behind defendant's SUV testified she saw the male passenger exit defendant's SUV and run into the back door of the bar.
 {¶ 13} Officers arrested defendant and detained a female passenger in his SUV. From defendant the officers confiscated $2,000 cash, a cell-phone, and a driver's license with an address that apparently was not defendant's, together with heavy gold and diamond jewelry that defendant was wearing. In a search of the Hot Spot Bar, officers arrested the male passenger who had been seen running from defendant's vehicle into the bar. The police recovered a blue plastic bag in a linen bin behind the bar that the passenger identified as the package he had taken from defendant's vehicle. Laboratory testing confirmed the substance in the bag was 498.8 grams of cocaine powder.
 {¶ 14} In his trial testimony, defendant admitted that he knowingly offered to sell the confidential police informant a half-kilogram of cocaine. Defendant, however, testified he had no intent to actually sell the informant any drugs. Rather, he made the statements as part of a sham in which he intended only to lure the informant to the park, beat him up, and take his money. Defendant stated he planned on beating and robbing the informant to teach the police a lesson because he knew the informant was working for the police.
 {¶ 15} When construed in a light most favorable to the prosecution, the evidence is sufficient to support defendant's conviction for drug trafficking based on an "offer to sell" a controlled substance. Indeed, defendant's admissions at trial that he knowingly offered to sell a half-kilogram of cocaine to the confidential informant were in themselves sufficient to support the jury's verdict of guilt. Arlen v. State
(1980), 61 Ohio St.2d 168, 175 (noting that "a party's testimony of facts subversive to his interests is alone sufficient to support a verdict"). Further, given defendant's admissions at trial, the evidence does not weigh heavily in favor of defendant. The jury properly could have found unbelievable defendant's testimony that his offers to sell cocaine to the informant were only a ruse to rob the informant. The verdict was not against the manifest weight of the evidence, and defendant's third assignment of error is overruled.
 {¶ 16} In the first assignment of error, defendant claims the trial court erred in refusing to instruct the jury, as defendant requested and 4 Ohio Jury Instructions (2004), Section 525.03(3) provides, that an "offer to sell" means "to present for acceptance or rejection." Defendant challenges as insufficient the trial court's instruction that "offer to sell" means the declaration of "one's readiness or willingness to sell a controlled substance." As in the preceding assignment of error, defendant contends the evidence must prove an actual presentation of some substance that is offered for sale.
 {¶ 17} The trial court's duty is to fully and adequately instruct the jury on all the essential elements of the offense charged. State v.Manley (1994), 71 Ohio St.3d 342, 347; Miller v. State (1932),125 Ohio St. 415, paragraph one of the syllabus. The instructions found in the Ohio Jury Instructions are merely recommendations and are not mandatory. State v. Martens (1993), 90 Ohio App.3d 338, 343, jurisdictional motion overruled (1994), 68 Ohio St.3d 1451. A requested instruction should be given if the instruction is a correct statement of the law applicable to the facts in the case. City of Columbus v.Spingola (2001), 144 Ohio App.3d 76, 81, appeal not allowed,93 Ohio St.3d 1447. The trial court, however, has no obligation to give an instruction that is not an accurate reflection of Ohio law. Id. at 83. The trial court's refusal to give the instruction a defendant requests is reviewed for an abuse of discretion. State v. Wolons (1989),44 Ohio St.3d 64, 68. A single challenged jury instruction is not reviewed piecemeal or in isolation, but is reviewed in the context of the entire charge. State v. Price (1979), 60 Ohio St.2d 136, 141, certiorari denied (1980), 446 U.S. 943.
 {¶ 18} The trial court gave the following instructions to the jury concerning the "offer to sell" element of R.C. 2925.03(A)(1):
The term offer should be given its common meaning. To offer to sellmeans to declare one's readiness or willingness to sell a controlledsubstance.
You, the jury, as sole triers of the facts, should consider the totality of the circumstances and decide whether the State has produced sufficient evidence to prove beyond a reasonable doubt that the Defendant knowingly offered to sell a controlled substance.
For example, the dialogue and the course of conduct of the Defendant, as well as whether any substance was actually transferred by the Defendant or was present for transfer by the Defendant, may be relevant to this determination. If no substance was produced by the Defendant, you should examine any other relevant factors to determine if the Defendant acted knowingly. These factors include, but are not limited to, the terms of the offer, the prior history and dealings of the Defendant, his subsequent activities, the manner and efforts of the Defendant in obtaining a controlled substance, and the reason for his failure to transfer a controlled substance.
In a prosecution for offering to sell a controlled substance the State is not required to prove that a controlled substance was, in fact, sold, or even that a controlled substance existed. Rather, the State is required to prove that an offer was made to sell a controlled substance. A person can offer to sell a controlled substance without ever transferring a controlled substance to the buyer.
(Emphasis added; Tr. 614-615.)
 {¶ 19} The trial court's instruction to the jury on "offer to sell" was an accurate and complete statement of Ohio law. See Scott;Patterson; Bazzy; West, supra. R.C. 2925.03(A)(1) does not require that an accused present or transfer any substance when making an offer to sell a controlled substance, but only that the accused knowingly declare a readiness or willingness to sell a controlled substance. Scott, at 440. Because the trial court instructed the jury in accordance with the law,Scott, supra, the trial court did not abuse its discretion in refusing defendant's proposed instruction.
 {¶ 20} Defendant further claims in his first assignment of error that the prosecution mischaracterized the law by arguing in closing that defendant's testimony at trial, in which defendant admitted he knowingly offered to sell the confidential informant a half-kilogram of cocaine, was sufficient to establish an "offer to sell a controlled substance." Contrary to defendant's claim, the prosecutor did not mischaracterize the law. Arlen, supra (noting "a party's testimony of facts subversive to his interests is alone sufficient to support a verdict"); Scott, supra (holding the crime is complete upon the offender declaring his readiness or willingness to sell a controlled substance). Defendant's first assignment of error accordingly is overruled.
 {¶ 21} In the second assignment of error, defendant claims the trial court denied him a fair trial by erroneous evidentiary rulings that (1) admitted jewelry and a photograph of defendant wearing the jewelry, (2) excluded evidence defendant proffered to explain his state of mind, and (3) admitted improper impeachment evidence.
 {¶ 22} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" Evid.R. 103(A). A trial court has broad discretion in the admission of evidence, and we will not disturb the trial court's decision unless the court has abused its discretion and the defendant has been materially prejudiced as a result. State v. Issa (2001), 93 Ohio St.3d 49, 64. Therefore, we confine our inquiry to whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues. State v. Barnes (2002), 94 Ohio St.3d 21, 23.
 {¶ 23} Defendant first challenges the trial court's admitting into evidence, over defendant's objection, gold and diamond jewelry defendant wore during the criminal transaction and a photograph of defendant wearing the jewelry. Defendant contends the jewelry and photograph were not relevant to any issue in the case and the prosecution offered them solely to portray defendant as a stereotypical drug dealer. Relying onUnited States v. Brockington (C.A.4, 1988), 849 F.2d 872, 874-875, defendant argues the prosecution may not use evidence of defendant's affinity for expensive jewelry to create an inference that he fits the profile of a drug dealer.
 {¶ 24} According to the record, defendant wore the subject jewelry during the criminal transaction, including his arrest. The trial court described the jewelry as "a huge gold necklace with what appeared to be diamonds," "a fairly large ring with what appear to be diamonds," and "a fairly large bracelet with what appear to be diamonds." (Tr. 403.) The prosecution presented the jewelry for admission into evidence with the other items confiscated from defendant upon his arrest and, unlike the prosecution in Brockington, at 874, made no suggestion that the jewelry was the type worn by a "stereotypical drug dealer."
 {¶ 25} Although the court in Brockington ruled the prosecution's remark improper, the court nevertheless found the improper argument did not warrant reversal. The court observed that the comment at issue was isolated and the prosecution made no further reference to the inference to be drawn from the jewelry. Id. at 475.
 {¶ 26} Here, the jewelry related to defendant's physical appearance at the time of his criminal activity and was relevant to his identification. Evid.R. 401; State v. Massey (Apr. 30, 1992), Cuyahoga App. No. 59928. Because the prosecution drew no link between defendant's jewelry and the type of jewelry worn by drug dealers, the trial court did not abuse its discretion in admitting the jewelry into evidence, and reversal on that basis is unwarranted. Evid.R. 402; Massey, supra.
 {¶ 27} Next, defendant claims the trial court abused its discretion in excluding evidence defendant proffered to explain the basis for his statements, made on cross-examination, that he believed the police and the prosecutor conspired to "set him up." The evidence at issue was a newspaper article, published three months after defendant's arrest, which reported that the body of a homicide victim was approximately found at 2:30 a.m. on March 3, 2002 at the rear of an address near the Hot Spot Bar, behind which defendant had been arrested five hours earlier. Defendant argued that the evidence was relevant because of a possible connection between the homicide victim and the halfkilogram of cocaine found in the Hot Spot Bar at the time of defendant's arrest. Finding no connection other than circumstance of time and location between the newspaper article and the facts in this case, the trial court excluded the proffered evidence as irrelevant.
 {¶ 28} Here, as in the trial court, defendant has failed to establish how the newspaper article was relevant to the central issue at trial: whether defendant knowingly offered to sell cocaine to the confidential informant. Even if the newspaper article helped explain defendant's professed belief at the time of trial that the police and the prosecutor engaged in a conspiracy to set him up, defendant presented his conspiracy theory through his own testimony and his cross-examination of state's witnesses. Accordingly, any error in the trial court's excluding the newspaper article is harmless and reversal is not warranted.
 {¶ 29} In the second assignment of error, defendant also claims he was denied a fair trial by the prosecution's cross-examination of defendant. During cross-examination, defendant testified that in making his offers to sell cocaine to the confidential informant, his purpose was not to sell the informant any cocaine, but instead his real purpose was to lure the informant and then rob him. The prosecution then questioned defendant, "When is the first time you have told this story to law enforcement officers — is that today?" (Tr. 533.) The trial court appropriately sustained defendant's immediate objection, and it denied defendant's request for a mistrial. The trial court instructed the jury to disregard the question completely; defendant declined the trial court's offer to issue a more lengthy curative instruction to the jury. In this appeal, defendant asserts the prosecution improperly impeached defendant with his post-arrest silence.
 {¶ 30} Use of a defendant's post-arrest, post-Miranda silence for impeachment purposes violates constitutional due process. See State v.Leach, 102 Ohio St.3d 135, 138, 2004-Ohio-2147. We note, however, that defendant did not answer the question at issue; therefore, no improper impeachment evidence was presented. Moreover, in addition to its immediate instruction to disregard the prosecutor's question, the court instructed the jury prior to trial that (1) questions themselves are not evidence, and (2) if an objection to a question is sustained, the jury must not speculate as to what the answer might have been. The jury is presumed to follow the trial court's instructions. State v. Raglin
(1998), 83 Ohio St.3d 253, 264, certiorari denied (1999), 525 U.S. 1180. Because no improper impeachment evidence was presented and the trial court appropriately instructed the jury not to consider the prosecutor's question or the possible answer, we conclude defendant was not unduly prejudiced or denied his right to a fair trial. Defendant's second assignment of error is overruled.
 {¶ 31} In the fourth assignment of error, defendant asserts the seven-year sentence the trial court imposed on defendant is contrary to law. Defendant contends that, based on the facts in the indictment and the jury's verdict, the trial court was obligated to sentence him to no more than the statutory minimum of two years imprisonment.
 {¶ 32} The jury found defendant guilty of trafficking in cocaine in an amount equal to or exceeding 100 grams but less than 500 grams, a second-degree felony pursuant to R.C. 2925.03(A), (C)(4)(e), which carries a minimum prison term of two years and a maximum prison term of eight years under Ohio's sentencing scheme. R.C. 2929.14(A)(2). R.C.2929.14(B) instructs a trial court to impose the shortest prison term authorized for the offense unless (1) the offender was serving a prison term at the time of the offense or had previously served a prison term,or (2) "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." (Emphasis added.)
 {¶ 33} As R.C. 2929.14(B)(2) permits, the trial court exceeded the minimum term for a second-degree felony and sentenced defendant to a seven-year prison term based upon its express finding that the shortest prison term would demean the seriousness of defendant's offense and would not adequately protect the public from future crimes upon defendant's release from prison. In support of its conclusions, the court noted the exceptional purity of the cocaine recovered in the case, aggressive and threatening behavior defendant exhibited to the police and at trial in front of the jury, and defendant's extensive criminal history as a juvenile and as an adult, including other charges and a conviction for another drug-related offense after defendant was charged with the instant offense.
 {¶ 34} Defendant asserts the court's R.C. 2929.14(B)(2) finding equates to an improper finding of fact under Blakely v. Washington
(2004), 524 U.S. ___, 124 S.Ct. 2531, and Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, that violates his Sixth Amendment right to have a jury determine the additional facts necessary to increase defendant's penalty beyond the prescribed statutory minimum two-year term.
 {¶ 35} In Blakely, the state of Washington charged the defendant with first-degree kidnapping, but defendant entered a guilty plea admitting the elements of second-degree kidnapping involving domestic violence and use of a firearm. Id. at 2534. In Washington, second-degree kidnapping is a class B felony, which is subject to a ten-year maximum prison term under state law. Id. at 2535. Another provision of Washington law limits the range of sentences a judge may impose for the offense of second-degree kidnapping with a firearm, and statutorily prescribes a "standard range" of 49 to 53 months for the offense. Id. Under Washington law, a judge is permitted to impose a sentence above the standard range authorized by law for a offense if the judge finds "substantial and compelling reasons justifying an exceptional sentence." Id. Finding the defendant had acted with "deliberate cruelty," the trial court imposed an "exceptional" sentence of 90 months imprisonment, more than three years above the 53-month maximum for the offense of second-degree kidnapping with a firearm. Objecting that the 90-month sentence exceeded the standard sentencing range permitted by Washington law for the offense to which he had pled guilty, the defendant ultimately appealed his sentence to the United States Supreme Court.
 {¶ 36} The United States Supreme Court applied its rule from Apprendi
that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."Blakely, at 2536, quoting Apprendi, at 490. The court held that the trial court's imposition of the sentence in Blakely that exceeded the 53-month statutory maximum violated the defendant's Sixth Amendment right to trial by jury because the fact the trial court used to exceed the standard sentencing range, "deliberate cruelty," was neither admitted by the defendant nor found by a jury.
 {¶ 37} The circumstances in Blakely are distinguishable from those in this case. Foremost, the state of Washington has a determinate sentencing scheme, Blakely, at 2540, whereas Ohio has an indeterminate sentencing scheme. Blakely is expressly inapplicable to indeterminate sentencing schemes. Blakely, at 2540 (finding that indeterminate sentencing schemes, which involve judicial factfinding as to facts a judge deems important in exercising his or her sentencing discretion within a standard sentencing range, do not infringe on the province of the jury under the Sixth Amendment). See, also, State v. Jenkins, Summit App No. 22008, 2005-Ohio-11, ¶ 14; State v. Rowles, Summit App. No. 22007,2005-Ohio-14, ¶ 13; State v. Berry, Butler App. No. CA2003-02-053,2004-Ohio-6027, ¶ 48.
 {¶ 38} Further, in contrast to the trial courts in Blakely andApprendi, the trial court here sentenced defendant to a term within the statutorily prescribed standard sentencing range. As long as a court sentences a defendant to a prison term within the stated minimum and maximum terms permitted by law, the Sixth Amendment is not violated andBlakely and Apprendi are not implicated. State v. Perry, Cuyahoga App. No. 84397, 2005-Ohio-27, ¶ 94; State v. Hardie, Washington App. No. 04CA21, 2004-Ohio-7278, ¶ 10; State v. Wheeler, Washington App. No. 04CA1, 2004-Ohio-6598, ¶ 22; State v. Bell, Hamilton App. No. C-030726, 2004-Ohio-3621, ¶ 40-42, appeal not allowed, 133 Ohio St.3d 1481,2004-Ohio-5405. See, also, Harris v. United States (2002), 536 U.S. 545,564, 122 S.Ct. 2406, 2418 (stating that "[t]he judge may impose the minimum, the maximum, or any other sentence within the [standard] range [prescribed by statute for the offense for which the jury found the defendant guilty] without seeking further authorization from those juries — and without contradicting Apprendi").
 {¶ 39} Ohio law does not require a trial court to impose the minimum sentence, but instead authorizes trial courts to exceed the minimum sentence and impose any prison term within the sentencing range permitted by statute if the court makes a finding under R.C. 2929.14(B)(2) that the shortest prison term would demean the seriousness of the offender's conduct or that it would not adequately protect the public from future crime by the offender or others. State v. Eckstein, Hamilton App. No. C-030139, 2004-Ohio-5059, ¶ 23. In other words, a judge is "free to use [his or her] discretion, and to consider facts not presented to the jury, in deciding the appropriate punishment from within the range
prescribed by statute." (Emphasis added.) State v. Henry, Delaware App No. 2004-CAA-06-047, 2004-Ohio-6711, ¶ 38. Unlike Blakely and Apprendi,
the R.C. 2929.14(B)(2) factors do not subject an offender to a prison term greater than the maximum sentence authorized by statute for the offense for which an offender has been found or has pled guilty.
 {¶ 40} The findings the trial court made under R.C 2929.14(B)(2) are not the type of findings that "infringe on the province of the jury" as was the case in Blakely. Rowles, supra, ¶ 19. The factors in R.C.2929.14(B)(2) relating to the offense and the offender are discretionary factors that trial courts have traditionally considered in determining what sentence to impose within the limits prescribed by statute.Apprendi, at 481; Eckstein, supra, ¶ 27. Moreover, contrary to defendant's assertion, "the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt." Harris, supra.
 {¶ 41} In the final analysis, the trial court's sentence does not violate Blakely, Apprendi, or Ohio law because (1) the sentence is within the standard sentencing range prescribed by statue for a second-degree felony, and (2) the trial court found under R.C. 2929.14(B)(2) that the two-year minimum sentence would demean the seriousness of defendant's drug trafficking offense and would not adequately protect the public from defendant's future criminal conduct. State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522. Defendant's fourth assignment of error is overruled.
 {¶ 42} Defendant asserts in his fifth, and final, assignment of error, that the trial court abused its discretion in imposing upon defendant a fine of $15,000, the maximum amount allowed for defendant's second-degree felony conviction for drug trafficking.
 {¶ 43} In sentencing an offender convicted of a drug trafficking offense, a court must impose, in addition to any prison term the relevant statute authorizes and the judge decides to require, a mandatory fine as specified in R.C. 2929.18(B)(1) unless the court determines that the offender is indigent and unable to pay the fine. R.C. 2925.03(D)(1);State v. Gipson (1998), 80 Ohio St.3d 626. Pursuant to R.C. 2929.18(B)(1), the mandatory fine imposed must be at least one-half, but not more than, the maximum statutory fine authorized for the offense level. The maximum fine authorized for a seconddegree felony is $15,000. R.C. 2929.18(A)(3). We review the trial court's decision imposing the fine for an error of law or an abuse of discretion. Gipson, at 634; State v. Williams,
Franklin App. No. 02AP-35, 2002-Ohio-4503, appeal not allowed,98 Ohio St.3d 1412, 2003-Ohio-60.
 {¶ 44} An offender who files an affidavit alleging that he is indigent and unable to pay a mandatory fine is not automatically entitled to a waiver of that fine. Gipson, supra; State v. Gutierrez (1994),95 Ohio App.3d 414, 417. "[T]he burden is on the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." Gipson, at 635.
 {¶ 45} In his affidavit of indigency, defendant claimed he had no assets and no sources of income with which to pay the fine. Evidence presented at trial, however, indicates that although defendant worked in a restaurant or bar, at the time he was arrested he had $2,000 in cash in his pocket, wore several large pieces of gold and diamond jewelry, had diamonds in his teeth, and drove an expensive vehicle, all reflective of wealth. The record further indicates that the half-kilogram of cocaine recovered during defendant's arrest was extremely pure in quality, and that defendant was engaged in other drug-related activity.
 {¶ 46} Moreover, although defendant will serve a seven-year prison term, he will be only 35 when his term is served. The evidence does not indicate that defendant would be incapable of working to pay the fine upon his release. Even if defendant were indigent at the time of his sentencing, future ability to pay is an appropriate consideration in imposing a fine. Gipson, at 636. Given the circumstances in this case, we cannot say the court abused its discretion in imposing the maximum fine of $15,000 upon defendant. Defendant's fifth assignment of error is overruled.
 {¶ 47} Having overruled each of defendant's assignments of error, we affirm the trial court's judgment.
Judgment affirmed.
Lazarus and Sadler, JJ., concur.