OPINION
{¶ 1} Defendant-appellant, Jeffrey N. Newcomb, appeals from the judgment of the Franklin County Court of Common Pleas sentencing him to three years imprisonment for his sexual battery conviction, a third-degree felony.
 {¶ 2} On July 29, 2002, the Franklin County Grand Jury indicted appellant on: (1) rape, a first-degree felony, in violation of R.C. 2907.02; (2) kidnapping, a first-degree felony, in violation of R.C. 2905.01; (3) sexual battery, a third-degree felony, in violation of R.C. 2907.03; (4) gross sexual imposition, a third-degree felony, in violation of R.C.2907.05; and (5) unlawful sexual conduct with a minor, a fourth-degree felony, in violation of R.C. 2907.04. The charges involved the 19-year-old appellant sexually abusing a 14-year-old girl, and the incident occurred on July 23, 2001, at the Ohio School for the Deaf. Both appellant and the victim are deaf. The victim was a student at the school, and appellant graduated from the school in 1999.
 {¶ 3} On January 16, 2003, appellant pled guilty to the third-degree sexual battery charge. Plaintiff-appellee, the State of Ohio, dismissed the remaining charges. At the plea hearing, appellee mentioned that the victim "did not wish to testify" and that she "was scared to come here[.]" (Jan. 2003 Tr. at 9.) The trial court continued the sentencing for a pre-sentence investigation report.
 {¶ 4} The pre-sentence investigation report indicates that staff from the Ohio School for the Deaf called law enforcement officers after the victim told her counselor about the incident. The staff told law enforcement officers that the victim was at a local hospital. Law enforcement officers went to the hospital to investigate. According to the law enforcement officers, they arrived at the hospital to find the victim refusing a "sexual assault kit" and saying that "she just wanted it to be over." The pre-sentence investigation report also contains victim and witness interviews pertaining to the July 23, 2001 incident.
 {¶ 5} Law enforcement interviewed the victim at the hospital, and she provided the following information. On July 23, 2001, the victim's uncle took her and Ms. Croasmun to the Ohio School for the Deaf. The victim's uncle asked a staff member at the school "if it was okay that the girls stay overnight at the school." The staff member stated that "it was okay[,]" and that he was "supervising the dorm that evening." At the school, the victim and Croasmun socialized with some friends. Appellant was also at the school. People were drinking, and the victim drank six bottles of beer. She then felt dizzy and lay down on a bed. Thereafter:
* * * She thought [appellant] shut off the lights; he then jumped on top of her holding down her right wrist. She began to scream and her friends ran into the room and stopped him. * * *
The victim stated that appellant "never penetrated her."
 {¶ 6} In their investigative report, law enforcement officers noted that the staff member who allowed the victim to spend the night "did not have the authority to give the permission."
 {¶ 7} Law enforcement officers also talked with a witness, Mr. Cook, who provided the following information. Cook and appellant were at the Ohio School for the Deaf socializing and drinking beer that they had bought. "The victim had begged for some beer and he finally gave her some[.]" She drank "about five beers." Next, "the victim started making `the moves' on [appellant,]" and appellant and the victim started kissing. Cook and Croasmun then separated the victim and appellant, but appellant and the victim later left the room together. Afterward, Cook "heard a strange noise" and found appellant and the victim in a room with appellant "on top of the victim." Appellant "had his pants halfway down and the victim's pants were completely off." "The victim * * * complained that her anus hurt." Eventually, "the victim was taken" to a bedroom "and put to bed."
 {¶ 8} Mr. Artino also spoke with law enforcement officers about the July 23, 2001 incident. Artino told law enforcement officers that he did not see the incident, but that the victim subsequently told him that "her anus hurt really bad" and that appellant raped her by putting "his penis in her anus."
 {¶ 9} Croasmun sent law enforcement officers an e-mail message and stated the following about the July 23, 2001 incident. Appellant brought beer to the Ohio School for the Deaf. In the course of events, appellant and the victim became intoxicated and they "were left alone in a room." "When [Cook] heard the victim scream they went into the room and found the offender on top of the victim." The victim claimed that appellant "raped her[,]" but Croasmun did not believe the victim.
 {¶ 10} Law enforcement officers interviewed the victim again on March 26, 2002. Although the victim previously told law enforcement officers that appellant did not penetrate her during the July 23, 2001 incident, the victim stated at this subsequent interview that she and appellant did have anal intercourse and that she did not consent to the sexual activity. The victim also mentioned that appellant "forcibly took off her pants and underwear" and that the victim "kept telling [appellant] no, both verbally and in sign language." The victim also stated that her anus hurt from the incident and that "she bled from her anal area for several months."
 {¶ 11} Appellant spoke with a court official who prepared the pre-sentence investigation report. Appellant provided the following information about the July 23, 2001 incident. Appellant met his friend Cook at the Ohio School for the Deaf. Appellant brought beer and drank ten beers. Although appellant did not want the victim to drink the alcohol, the victim threatened to tell campus security about the beer unless he and Cook gave her some. In the course of events, the victim "came onto" appellant. Appellant then felt "dizzy and sick" from the victim "trying to have sex with [him.]" Thus, appellant "accidentally knocked [the victim] down" and tried to get up. In doing so, appellant put his hand "on [the victim's] buttock for balance and accidentally slip[ped] [his] finger in her anus." Appellant "was aware [that the victim] was between the ages of 14 and 17 years old." Appellant also stated that "he thinks the victim was enjoying herself" during the incident.
 {¶ 12} On March 12, 2003, the trial court held a sentencing hearing. The victim attended the hearing and stated that, "I do believe that [appellant] should go to jail." (Jan. 2003 Tr. at 14.) Appellant's defense counsel indicated that appellant "has no prior criminal history whatsoever." Id. The trial court sentenced appellant to four years imprisonment and adjudicated appellant a sexually oriented offender. The trial court imposed a prison sentence on appellant that exceeded the one-year minimum authorized prison term for third-degree felonies. R.C.2929.14(A)(3). However, the trial court did not impose a prison sentence that exceeded the five-year maximum authorized prison term for third-degree felonies. R.C. 2929.14(A)(3).
 {¶ 13} Subsequently, appellant appealed his conviction and sentence inState v. Newcomb, Franklin App. No. 03AP-404, 2004-Ohio-4099. This court reversed appellant's sentence, holding that the trial court failed to comply with the felony sentencing statutes when it sentenced appellant to a non-minimum prison term. Id. at ¶ 41, 48. Specifically, we concluded that the trial court failed to make the requisite statutory findings when imposing the non-minimum sentence. Id. at ¶ 41.
 {¶ 14} On remand, the trial court held another sentencing hearing. At re-sentencing, a new judge was presiding over the trial court. The trial court re-sentenced appellant to three years imprisonment on the third-degree sexual battery charge. In imposing a non-minimum sentence on appellant, the trial court stated: "[T]he shortest term provided for an F3 is not appropriate and would demean the seriousness of the offense, and does not adequately protect the public." (Oct. 2004 Tr. at 20.) The court indicated that it was relying on "the age of the victim, the victim's handicap, * * * the use of alcohol, and very serious physical, not to mention * * * what must be tremendous emotional damage to the victim[.]" Id. By imposing three years imprisonment instead of four years imprisonment, as the previous presiding judge did, the trial court noted that it "perhaps is a little more persuaded by the fact that the defendant has no prior record than [the previous presiding judge] was." Id. Again, the three-year prison sentence exceeded the one-year minimum authorized prison sentence for third-degree felonies, but did not exceed the five-year maximum authorized prison sentence for third-degree felonies. R.C. 2929.14(A)(3).
 {¶ 15} Appellant appeals, raising one assignment of error:
The trial court erred in sentencing Jeffrey N. Newcomb to more than the minimum sentence for a felony of the third degree.
 {¶ 16} Appellant's single assignment of error concerns the trial court's decision to impose three years imprisonment on appellant for his third-degree felony conviction. Appellant argues that the trial court erred by imposing more than the minimum authorized prison sentence for his conviction. We disagree.
 {¶ 17} When a trial court imposes a term of imprisonment that is greater than the minimum authorized sentence upon a felon, like appellant, who has not previously served a prison term, the trial court must find that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). The trial court must make its findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 26. However, a trial court is not required to provide reasons behind its R.C. 2929.14(B) findings.State v. Edmonson (1999), 86 Ohio St.3d 324, 326; Comer at ¶ 26, fn. 2.
 {¶ 18} R.C. 2929.12(B), (C), (D), and (E) enumerates seriousness and recidivism factors that the trial court must consider when imposing a sentence. State v. Arnett (2000), 88 Ohio St.3d 208, 213. The trial court is not limited to the enumerated factors in R.C. 2929.12, but may also consider any other "relevant factors" that establish the seriousness of a defendant's offense or the defendant's likelihood of recidivism. See R.C. 2929.12(B), (C), (D), and (E). The felony sentencing statutes do not require the trial court to use specific language or make specific findings on record when considering the R.C. 2929.12 factors. Arnett at 215.
 {¶ 19} However, a trial court's decision to impose a non-minimum sentence is "contrary to law" and subject to remand if, by clear and convincing evidence, the trial court failed to make the requisite findings under R.C. 2929.14(B) or the record does not support the trial court's R.C. 2929.14(B) findings. State v. Worrell, Franklin App. No. 04AP-410, 2005-Ohio-1521, at ¶ 75, citing State v. Altalla, Franklin App. No. 03AP-1127, 2004-Ohio-4226, at ¶ 7. Clear and convincing evidence is:
* * * "* * * [T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." * * *
State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 20} Here, the trial court imposed a non-minimum sentence on appellant, pursuant to R.C. 2929.14(B), upon concluding that "the shortest term provided for an F3 is not appropriate and would demean the seriousness of the offense, and does not adequately protect the public." (Oct. 2004 Tr. at 20.) Through this language, the trial court made the requisite findings under R.C. 2929.14(B) when imposing a non-minimum sentence on appellant.
 {¶ 21} In challenging his sentence, appellant claims that the record does not support the trial court's statement that the victim suffered "what must be tremendous emotional damage[.]" However, as noted above, a trial court is not required to provide reasons behind its R.C. 2929.14(B) findings. Edmonson at 326; Comer at ¶ 26, fn. 2. Because the trial court is not required to provide reasons for its R.C. 2929.14(B) findings, the appellate court effectively reviews de novo whether clear and convincing evidence supports such findings. State v. Eichner (Oct. 8, 1999), Lucas App. No. L-981-370. Consequently, here, we do not focus on the reasons that the trial court provided in support of its R.C. 2929.14(B) findings, but look to whether clear and convincing evidence ultimately supports the trial court's R.C. 2929.14(B) findings that a minimum sentence "would demean the seriousness of the offense, and does not adequately protect the public." (Oct. 2004 Tr. at 20.) Eichner; Worrell
at ¶ 75.
 {¶ 22} First, we examine whether clear and convincing evidence supports the trial court's finding that a minimum sentence "would demean the seriousness of the offense[.]" (Oct. 2004 Tr. at 20.) Initially, we note that the victim did suffer emotional trauma from the sexual abuse. Specifically, at the hospital, the victim stated that she did not want to complete a sexual assault kit because "she just wanted it to be over." Likewise, appellee mentioned during the plea hearing that the victim was "scared" to testify. (Jan. 2003 Tr. at 9.) Such emotional trauma supports the trial court's finding under R.C. 2929.14(B) that a minimum prison term would demean the seriousness of appellant's offense. See State v.Clifford, Clark App. No. 2002-CA-58, 2003-Ohio-901, at ¶ 19.
 {¶ 23} Moreover, the victim suffered serious physical harm from the sexual abuse, an enumerated factor in R.C. 2929.12(B)(2) that makes appellant's offense "more serious than conduct normally constituting the offense[.]" "Serious physical harm to persons" includes "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). Here, the victim suffered pain that rose to the level of "serious physical harm" under R.C.2901.01(A)(5)(e), as evinced by the victim complaining that her "anus hurt really bad" from the sexual abuse.
 {¶ 24} "Serious physical harm to persons" also includes "temporary, serious disfigurement[.]" R.C. 2901.01(A)(5)(d). Courts have held that, under certain circumstances, injuries that last for a prolonged period of time constitute serious physical harm. See, e.g., State v. Barbee,
Cuyahoga App. No. 82868, 2004-Ohio-3126, at ¶ 60 (concluding that a victim's extensive bruising that lasted for four days constituted serious physical harm); State v. Krull, 154 Ohio App.3d 219, 2003-Ohio-4611, at ¶ 23 (holding that a child suffered serious physical harm through bruising and marks on his buttocks and thighs that caused pain for several days). Similarly, here, the victim suffered "serious physical harm" under R.C. 2901.01(A)(5)(d) because she was bleeding "from her anal area for several months."
 {¶ 25} We also note that the victim was 14 years old when she experienced the physical and emotional harm from appellant's sexual abuse. Under R.C. 2929.12(B)(1), an offense is "more serious than conduct normally constituting the offense" when the victim's age exacerbates the physical or mental injuries. In State v. Reynolds (July 30, 2001), Tuscarawas App. No. 2000 AP 11 0080, the Fifth District Court of Appeals applied R.C. 2929.12(B)(1) to a case involving a 14-year-old child who "endured a traumatic event" through the defendant's forced sexual contact. The defendant's activity led to his conviction for unlawful sexual conduct with a minor in violation of R.C. 2907.04. The Reynolds
court concluded that the victim's age exacerbated her physical and mental injuries, pursuant to R.C. 2929.12(B)(1), "[i]n that the victim was a 14 year old child and the sexual conduct showed clear elements of forced, non-consensual sexual conduct[.]" According to the appellate court, this exacerbation established the seriousness of the defendant's sexual abuse offense. Id. Here, like Reynolds, the victim was a 14-year-old child who endured a "traumatic event" through appellant's forced sexual contact. Therefore, the record establishes that the victim's age exacerbated her physical and mental injuries, which, consequently, further demonstrates the seriousness of appellant's offense. See Reynolds; R.C. 2929.12(B)(1).
 {¶ 26} Another factor establishing the seriousness of appellant's offense is that appellant, by his own admission, furnished alcohol to the minor victim and committed the sexual abuse while the victim was intoxicated. See State v. Curd, Lake App. No. 2003-L-030, 2004-Ohio-7222, at ¶ 90-91. Further, appellant's own intoxication is "an aggravating factor" because appellant was 19 years old when he committed the offense and had no legal right to consume alcohol under Ohio law. Id. at ¶ 70.
 {¶ 27} Accordingly, based on the above, we conclude that the record supports by clear and convincing evidence the trial court's findings under R.C. 2929.14(B) that a minimum sentence would "demean the seriousness of the offense[.]" (Oct. 2004 Tr. at 20.) Worrell at ¶ 75.
 {¶ 28} We further conclude that the record supports the trial court's R.C. 2929.14(B) finding that the minimum sentence would not "adequately protect the public" from appellant's future crimes. Under R.C.2929.12(D)(5), an offender "is likely to commit future crimes" if "[t]he offender shows no genuine remorse for the offense." Here, appellant, who pled guilty to sexual battery, claimed that "the victim was enjoying herself" during the incident. This statement confirms that appellant demonstrates no "genuine remorse for the offense" and is likely to re-offend. R.C. 2929.12(D)(5).
 {¶ 29} Next, in his reply brief, appellant argues that his Sixth
Amendment right to a jury trial prohibits a trial court from imposing more than the minimum authorized prison sentence without the jury finding or appellant admitting to the factors in R.C. 2929.14(B). We note that appellant raises this issue for the first time in his reply brief, even though the reply brief merely affords an appellant "an opportunity to reply to the brief of the appellee." See Sheppard v. Mack (1980),68 Ohio App.2d 95, 97, fn. 1. Appellant most likely raised this new issue in his reply brief because he relies, in part, on United States v.Booker (2005), ___ U.S. ___, 125 S.Ct. 738, which the Supreme Court issued after appellant filed his merit brief. Nevertheless, appellee has not objected to appellant raising the Sixth Amendment argument in his reply brief, and we will address appellant's argument in the interest of justice. See State v. Peagler (1996), 76 Ohio St.3d 496, 499 (recognizing an appellate court's authority under App.R. 12[A][2] to address or disregard issues that an appellant has not properly briefed or assigned).
 {¶ 30} Appellant's argument stems from Apprendi v. New Jersey (2000),530 U.S. 466; and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, and their progeny. In Apprendi, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Otherwise, the sentence violates a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution and Fourteenth Amendment due process guarantees. Apprendi at 476-478, 497. In Blakely, the United States Supreme Court defined "`statutory maximum' for Apprendi purposes" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the juryverdict or admitted by the defendant." (Emphasis sic.) Blakely at 2537.Booker reaffirmed Blakely and Apprendi, and applied them to the federal sentencing statutes. Booker at 755-756.
 {¶ 31} Appellant's arguments are in accord with State v. Montgomery,159 Ohio App.3d 752, 2005-Ohio-1018. In Montgomery, the First District Court of Appeals held that, pursuant to Apprendi and Blakely, Ohio's felony sentencing statutes "are unconstitutional to the extent that the statutes allow a trial court to increase" a defendant's sentence above the minimum authorized sentence "in the absence of jury findings or admissions by the defendant." Id. at ¶ 14.
 {¶ 32} Nonetheless, we reject appellant's contentions based on our decision in State v. Abdul-Mumin, Franklin App. No. 04AP-485,2005-Ohio-522. In Abdul-Mumin, we concluded that Apprendi and Blakely do not prohibit a trial court from imposing a non-minimum prison sentence under Ohio's felony sentencing statutes, even though the sentencing statutes do not require the jury to find, or the defendant to admit to, the applicable statutory factors that allow a trial court to impose a sentence above the authorized minimum. Id. at ¶ 29.
 {¶ 33} As the Twelfth District Court of Appeals stated, Ohio's felony sentencing statutes "`involve guidance for determining the impact of a sentence on public protection and proportionality — determinations that have always been made by a judge in deciding fairness and necessity of a sentence. Those are decisions that have never been consigned to juries and, thus, are not governed by the Sixth and Fourteenth Amendments to the United States Constitution[,]'" the constitutional principles underlyingBlakely and Apprendi. State v. Berry, 159 Ohio App.3d 476,2004-Ohio-6027, at ¶ 40, quoting Griffin Katz, Ohio Felony Sentencing Law (2004), 482, Section 2:22; see, also, Abdul-Mumin at ¶ 32 (Klatt, J., concurring) (emphasizing that "it has always been the province of the judge, not the jury, to determine the impact of a sentence on public protection and proportionality").
 {¶ 34} Accordingly, we previously concluded that, under Ohio's felony sentencing statutes, "[a]s long as a court sentences a defendant to a prison term within the stated minimum and maximum terms permitted by law, * * * Blakely and Apprendi are not implicated." State v. Sieng, Franklin App. No. 04AP-556, 2005-Ohio-1003, at ¶ 38. Here, the trial court sentenced appellant within the standard sentencing ranges. Thus, in accordance with Abdul-Mumin and Sieng, we conclude that Blakely andApprendi did not preclude the trial court from imposing a non-minimum sentence on appellant.
 {¶ 35} In the final analysis, we conclude that the trial court did not err by imposing a non-minimum prison sentence on appellant. As such, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Petree, JJ., concur.